MACHINE CO. v. TOBACCO CO.

(Filed May 8, 1906).

*Contracts —Damages —Loss of Profits.*

1. Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed.

2. The law seeks to give full compensation in damages for breach of contract, and in pursuit of this end, it allows profits to be considered when the contract itself, or any rule of law, or any other element in the case furnishes a standard by which their amount may be determined with sufficient certainty.

3. In an action for damages for a breach of contract, in the absence of some standard fixed by the parties when they made their contract, the law will not permit mere profits, depending upon the chances of business and other contingent circumstances, and which are perhaps merely fanciful, to be considered by the jury as part of the compensation.

4. In an action for damages by reason of defendant's failure to exhibit plaintiff's cigarette machine at the St. Louis Exposition, as it had contracted to do, the court erred in charging the jury that they might allow plaintiff damages suffered by the loss of profits it would have made if the contract had been performed and the loss of the benefits that would have accrued to it in increased sales of its machines, etc., in the absence of evidence that plaintiff had secured any contracts for the purchase of its machines if these proved satisfactory when exhibited, or that plaintiff would have made any particular number of sales, or any other proof which would enable the jury by any certain and reliable standard to estimate the losses.

ACTION by Winston Cigarette Machine Co. against Wells-Whitehead Tobacco Co., heard by *Judge E. B. Jones* and a jury, at the December Term, 1905, of the Superior Court of FORSYTH.

In August, 1903, the defendant, being a manufacturer of cigarettes and desiring to advertise its brand, contracted with the plaintiff, who is the manufacturer of the Briggs cigarette machine, that if the plaintiff would furnish one of its machines well equipped for the purpose, the defendant would operate and exhibit it at the St. Louis Exposition in 1904. The plaintiff alleged that it performed the contract on its part by preparing the machine for exhibition, and did so at considerable expense, but that the defendant, just before the exposition was opened and when it was too late to make other arrangements to have its machine exhibited, refused to operate and exhibit the machine at the exposition as it had undertaken and promised to do, without any reasonable or valid excuse for so doing. The defendant admits the contract as alleged, except that it alleges there was a condition precedent annexed to it, namely, that it could procure free, or without any charge therefor, such space in the exposition building as was needed for the purpose of operating and exhibiting the machine, and that this it failed to do without any fault on its part. Plaintiff alleged that by reason of the breach of the contract by the defendant, it has not only sus-

Machine Co. *v.* Tobacco Co.

tained damages in the way of money actually paid out to put
the machine in readiness, but that it has suffered further
damage by the loss of profits it would have made if the con-
tract had been performed, and the loss of the benefits that
would have accrued to it in increased sales of its machines,
by the exhibition of said machine at St. Louis, while in
actual operation, and by the advertisement of its peculiar
features and its advantages over other machines of a like
kind.   The issues submitted to the jury, with their answers
thereto, were as follows:   "1. Did the defendant contract to
exhibit at the St. Louis Exposition the cigarette machine of
the plaintiff, known as the Briggs machine, as alleged in the
complaint?   Ans. Yes.   2. Did the defendant fail and re-
fuse to carry out the contract aforesaid, as alleged in the
complaint?   Ans. Yes.   3. What amount, if any, is plain-
tiff entitled to recover for the construction and preparation
of the machine contracted to be delivered to defendant for
exhibition?   Ans. $211.   4. What amount, if any, is plain-
tiff entitled to recover for the failure of defendant to exhibit
the machine at the Universal Exposition, as alleged in the
complaint?   Ans. $5,000."   Upon the question of damages,
so far as it related to the fourth issue, the material part of
the charge to the jury, was as follows:   "In answering this
issue the court charges you that if you find the defendant
violated its contract by failure to exhibit the machine at St.
Louis, as agreed upon, the plaintiff would be entitled to at
least nominal damages.   And by nominal damages I mean a
penny or some such small amount.   And if the plaintiff has
failed to show you by the greater weight of the evidence that
its damages exceed a nominal amount, you should answer the
fourth issue one penny, or some other small amount.   Now
the plaintiff contends that, at the time of the execution of
this contract, both parties had in contemplation the profits
that would result to them from such an exhibition, that is,
the sale of defendant's cigarettes would be increased by such

exhibition, and the sale of plaintiff's machine for making cigarettes would be increased and thereby the anticipated and probable profits of both would be materially increased; and that by failure of defendant to comply with its part of the contract the plaintiff has lost the sale of many machines, and consequently the profits that would naturally follow a sale. In this branch of the case, gentlemen, the court finds it very difficult to lay down a certain rule by which you are to be governed in ascertaining and measuring the plaintiff's damages, if you should first find it has suffered damages by reason of defendant's failure to exhibit the machine at St. Louis. The plaintiff contends that this contract to exhibit at St. Louis had some value, and that the conduct of the defendant has deprived it of the value and profits which would naturally have grown out of the exhibition had defendant complied with its contract. A party seeking to recover profits for breach of contract is not required to prove, either that profits would have accrued, or the amount of them, by any other or higher evidence than one is required to produce in any other civil action. So, if the plaintiff has made it appear by a fair preponderance of the evidence that profits would have resulted from an exhibition of the machine at St. Louis, and if it has produced such evidence as will authorize a jury upon legitimate and proper inference to ascertain the amount of profits which would have been made, it would be entitled to recover such amount of damages as the jury may honestly and consistently believe due it by reason of the breach."

There was no evidence that the plaintiff had secured any contracts for the purchase of its machines, if they proved satisfactory when the model was exhibited and operated at St. Louis, nor was there any evidence that the plaintiff would have made any particular number of sales, nor was there any other proof which would enable the jury by any certain and reliable standard to estimate the losses, unless the evi-

dence herinafter stated is sufficient for that purpose. It was shown that the plaintiff had another offer for the exhibition of its machine, but declined the same because of the contract with the defendant. There was also evidence tending to show that the machines sold for $1,600 apiece and that the company had already sold from 150 to 160 of them in different parts of the world. That they were advertised usually by operating them where they could be seen by those interested in the purchase of such machinery and that one is constantly kept in New York on exhibition, as it is found necessary to prove the value of the machine to those who may buy by the actual operation of a machine in their presence. This particular machine which was to be exhibited at St. Louis had been exhibited elsewhere. The exhibition of them usually led to sales and almost all of them had been sold by reason of their value being demonstrated in the presence of the purchasers. The Briggs machine will turn out 125,000 to 150,000 cigarettes per day and is of simple construction. It costs about half as much as the Bonsack machine. About fifty of them are in operation. The plaintiff had intended to make an exhibit of one of its machines at St. Louis before the contract to do so was made with the defendant, and had decided to spend between $5,000 and $6,000 on the exhibition and operation of the machine at the exposition. Plaintiff further offered evidence tending to show that it would have cost $5,000 to exhibit and operate the machine itself, which it had intended to do before contracting with the defendant, and that it did not have the time and opportunity to make the required preparation for doing so after it was notified by the defendant that it would not perform the contract on its part.

Exceptions were taken by the defendant to His Honor's rulings and charge upon the fourth issue. There was a judgment upon the verdict and defendant appealed.

*Manly & Hendren* and *Watson, Buxton & Watson* for the plaintiff.

*Lindsay Patterson* and *Connor & Connor* for the defendant.

WALKER, J., after stating the case: There is no serious objection made by the defendant to the rulings and charge of the court upon the first, second and third issues and, after a careful perusal of the charge and an examination of the rulings of the court, so far as they bear upon those issues, we are satisfied that no exception can well be taken thereto. The defendant frankly and fully placed its right to the favorable consideration of this court upon its exception to that part of the charge which relates to the fourth issue and around this single question the contention of the parties was waged. While the inquiry we are about to make is important, it is by no means a novel one and does not open up any new field of legal investigation. It involves, not the discussion of any new principle, but merely the application of one of some antiquity to the actual facts of this case. We usually experience difficulty in adjusting even a well settled rule to any particular state of facts, but those in this case are so few and so simple that we should have little or no embarrassment in reaching a correct conclusion. Generally speaking, the amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for its breach. *Benjamin v. Hillard,* 23 How., 149; *Mace v. Ramsey,* 74 N. C., 14. Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed. *Ashe v. DeRosset,* 50 N.

C., 299; *Griffin v. Colver,* 16 N. Y., 489. It is the rule last stated which principally raises the doubt as to whether profits of the future should be included in any estimate of damages. They may be necessary to completely indemnify the injured party and they may also answer the other require- ment, in that the loss of them may naturally be expected to proximately result from a breach of the contract, but there still remains another important element to be considered and that is whether there is any reliable standard by which they can be ascertained, for we have seen that the damages must be certain, and this certainty which is required does not refer solely to their amount, but also to the question whether they will result at all from the breach. It is clear that whenever profits are rejected as an item in the calculation of damages, it is because they are subject to too many contingencies and are too dependent upon the fluctuations of markets and the chances of business to constitute a safe criterion for an esti- mate of damages. *Griffin v. Colver, supra.* "The law may, and often does, fail of doing complete justice, from the im- perfection of its means for ascertaining truth, and tracing and apportioning effects to their various causes; but it is not liable to the reproach of doing positive injustice by design. Such a doctrine would tend not only to make the law itself odious, but to corrupt its administration, by fostering a dis- regard of the just rights of parties. In actions upon contract, especially, and in those nominally in tort, but substantially upon contract, courts have thought it generally safer, upon the whole, to adopt certain definite rules for the government of the jury by which the damages could be estimated, at the risk of falling somewhat short of the actual damages, by re- jecting such as could not be estimated by a fixed rule than to leave the whole matter entirely at large with the jury, without any rule to govern their discretion, or to detect or correct errors or corruption in the verdict. In such cases, therefore, there has been a strong inclination to seize upon

such elements of certainty as the case might happen to present, and as might approximate compensation, and to frame thereon rules of law for the measurement of damages, though it might be evident that further damages must have been suffered, which,. however, could only be estimated as matter of opinion, and must, therefore, be excluded under the rules thus adopted." *Allison v. Chandler,* 11 Mich., 542. It will be seen, therefore, that the earlier rule which excluded profits altogether, as an element of damages, as being in their very nature too uncertain to be considered (Hale on Damages, 72,) has been modified so .as to permit their inclusion in the assessment if they are proximate and certain. The doctrine of Domat, as adopted by Sedgwick, that "The law does not aim at complete compensation for the injury sustained, but seeks rather to divide than satisfy the loss," has not been accepted by the courts as the true principle by which to measure the compensation for a breach, but may be safely said to have been rejected, for the law does seek to give full satisfaction in damages, including gains prevented and losses sustained, so far as is consistent with a just regard for the rights of the party who has broken the contract and, what is of more importance, for reasonable certainty in the administration of legal principles. In pursuit of this end it allows profits to be considered when the contract itself, or any rule of law, or any other element in the case furnishes a standard by which their amount may be determined with sufficient certainty. Illustrations of this principle are to be found in.several cases heretofore decided by this court. In *Mace v. Ramsey,* 74 N. C., 11, the defendant contracted to furnish the plaintiff a boat to carry passengers, who were expected to arrive on an excursion train, from Morehead City to Beaufort and other points in the harbor. The plaintiff was allowed to recover profits prevented by defendant's breach of his contract because their loss was not only the proximate result of the breach as being within the reasonable contemplation of the

parties, but because it appeared that the plaintiff had already engaged enough passengers for the boat to be furnished by the defendant and this fact introduced the element of certainty into the question of damages. The damages were thus made certain, both in their nature and in respect to the cause from which they proceeded. The distinction between such profits as can be thus definitely ascertained by some standard furnished by the contract itself or by the law, and those for the calculation of which there is no standard, but which are shadowy, uncertain and speculative and therefore incapable of legal computation, is clearly recognized in *Willis v. Branch,* 94 N. C., at p. 149, where it is said by the court: "If the plaintiff had existing engagements for theatrical entertainments, that were disappointed by the injury, damages sustained on that account might be embraced, but not for such as he might probably have had. The instruction given by the court was far too broad and indefinite—it embraced speculative damages, arising indirectly and remotely as a possible consequence of the trespass. Such damages are not recoverable." So in *Oldham v. Kerchner,* 79 N. C., 106, where the defendant failed to deliver corn to the plaintiff at his mill to be ground at a stipulated price, under a contract to that effect, the court held that the profits the plaintiff would have made should be included in the damages allowed by the jury, as the difference between the cost of grinding and the contract price furnished a sufficiently certain standard by which to measure the damages and was the true rule applicable to the facts of that case. "It is now well established (the court says at p. 111) that the profits which a plaintiff would have made if the contract had been complied with, is the measure of damages for its breach, in cases like the present. There are, of course, cases not within the rule, as where the profits are speculative and incapable of accurate ascertainment, or so remote that they cannot be supposed to have been within the contemplation of the parties, or where they depended on facts

MACHINE CO. *v.* TOBACCO CO.

of which the defendants had no notice, and which, therefore, could not have been in their contemplation." And in *Lewis v. Rountree,* 79 N. C., 122, the court held that the contract being for the sale and delivery of a specified number of barrels of rosin at a stipulated price, which was bought for the purpose of being resold in another market, the profit that would have been realized if the contract had been fulfilled was recoverable as a part of the damages, it being the difference between the price to be paid and the market price, where it was to have been resold, which rendered it capable of being estimated with reasonable certainty and therefore not contingent or speculative. This modification of what appears to have been the former rule as to profits is strikingly illustrated in the recent case of *Johnson v. Railroad,* at this term. The plaintiff sued to recover damages for the negligent destruction of his box factory by the defendant, it having been set on fire by sparks emitted from defendant's engine. It was shown that the plaintiff had outstanding and unfilled orders for a large number of boxes and we held, contrary to the ruling below, that the profits which would have been made upon those contracts were proper to be considered in computing the damages. The question is fully discussed by *Mr. Justice Connor,* who delivered the opinion of the court, and the distinction to be observed in such cases clearly defined. The same principle is also recognized and applied in *Tompkins v. Cotton Mill,* 130 N. C., 347. The rule as thus declared by this court has been generally, if not universally, adopted in the other States, and in the Federal jurisdiction. Hale on Damages, p. 72, *et. seq.; Aber v. Bratton,* 60 Mich, 367; *Masterton v. Mayor,* 7 Hill, 61; 1 Sutherland on Damages, sec. 64; *Allison v. Chandler, supra; McKinnon v. McEwan,* 48 Mich., 106. In the case last cited, the court says: "There are undoubtedly many cases where upon the breach of a contract the injured party is entitled to recover as damages the profits he would have made had the contract

not been broken. Where a party is to perform labor from which a profit would arise as the direct result of the work done at the contract price, such profits may be recovered. Or where a party is to furnish and deliver material under a contract and is prevented. The principles recognized in this class of cases are well established and have been applied in a great variety of cases. So in cases of tort the loss of profits may be allowed." While anticipated profits may be recovered in cases of the class we have mentioned, where there is a certain method afforded by which they can be estimated, we believe the courts are well-nigh unanimous in holding that when they are of an uncertain, contingent or speculative character, they are not to be allowed in compensation for the injury. This principle is stated concretely by *Mr. Justice Bynum,* with his usual terseness and vigor, in *Sledge v. Reid,* 73 N. C., at p. 443, as follows: "In an action of covenant for not furnishing machinery for a steam mill, at a stipulated time, the plaintiff cannot recover in damages the estimated value of the profits he might have made, if the covenant had been complied with, because they are too vague and uncertain to form any criterion of damages. Such has been the uniform course of decisions in this State. We think they are founded upon the soundest principles and sustained by the weight of authority." The authorities to sustain this proposition may be numerously cited. *Boyle v. Reeder,* 23 N. C., 607; *Foard v. Railroad,* 53 N. C., 235; *Roberts v. Cole,* 82 N. C., 292; *Walser v. Tel. Co.,* 114 N. C., 440; *Lumber Co. v. Iron Works,* 130 N. C., 584; *Memphis v. Brown,* 20 Wall., 289; *Aber v. Bratton, supra; Hair v. Barnes,* 26 Ill. App., 580; *Red v. Augusta,* 25 Ga., 386; *Pennypacker v. Jones,* 106 Pa. St., 237; *Willingham v. Hooven,* 74 Ga., 233; *Greene v. Williams,* 45 Ill., 206; *Bingham v. Walla Walla,* 13 Pac., 408; 1 Joyce on Damages, section 1285. Summing up the law upon this subject, it is said in *U. S. v. Behan,* 110 U. S., 338: "The *prima facie*

measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, namely: First, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of *Chief Justice Nelson,* in the case of *Masterton v. Mayor of Brooklyn,* 7 Hill, 69, they are 'the direct and immediate fruits of the contract,' they are free from this objection; they are then 'part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation.' Still, in order to furnish a ground of recovery in damages, they must be proved. If not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense. This loss, however, he is clearly entitled to recover in all cases, unless the other party, who has voluntarily stopped the performance of the contract, can show the contrary." But that court has expressly repudiated the claim that the possible or even probable benefits of a business yet *in fieri* can afford a safe rule by which to estimate damages. There was said to be so much uncertainty in such a rule itself, so many contingencies which may vary or extinguish its application, and so many difficulties in sustaining its legal correctness, that it was not believed proper to entertain it. *The Amiable Nancy,* 16 Wheaton, 560; *La Amistad de Rues,* 5 Wheaton, 385.

*Judge Story* said that, independent of all authorities, he was satisfied upon principle that an allowance of damages, upon the basis of a calculation of profits, is inadmissible where there is no certain standard to guide the jury. The rule would be in the highest degree unfavorable to the interests of the community and the subject would be involved in utter uncertainty. The computation would proceed upon contingencies, and would require a knowledge of markets to an exactness in point of time and value which would sometimes present embarrassing obstacles. Much would depend upon the vigilance and activity of the party who it is supposed would have made the profits and much upon the momentary demand and other considerations purely speculative. After all, it would be a mere calculation upon conjectures and not upon facts. *Schooner Lively,* 1 Gallison, 315. Any such estimate would be based upon imaginary and uncertain profits depending upon a variety of circumstances, the failure of any one of which would subvert the whole calculation and, for this reason, they would be *too remote and indeterminate* to enter into the measure of damages. *Mfg. Co. v. Rogers,* 19 Ga., 416. Should the rule contended for prevail, the breach of a very simple contract, or failure in some part, might bring ruin upon the party in default, by leaving the damages to the unbridled discretion of the jury, when in fact no such loss was contemplated. The adoption of such a rule would, therefore, be extremely dangerous. If such consequences are to follow, it is much better that the parties, when contracting, expressly provide for such enlarged responsibility. This they may do by liquidating the amount when the damages cannot be otherwise ascertained and are such as the law will not allow because of their uncertainty. *McKinnon v. McEwan, supra.* It is one of the very cases where parties may agree upon the amount of damages to be recovered upon a breach. "Where the damages resulting from a breach of contract cannot be measured by any definite pecu-

niary standard, as by market value or the like, but are wholly uncertain, the law favors a liquidation of the damages by the parties themselves; and where they stipulate for a reasonable amount, the agreement will be enforced." Hale on Damages, 133. But in the absence of some standard fixed by the parties when they make their contract, the law will not permit mere profits, depending upon the chances of business and other contingent circumstances and which are perhaps merely fanciful, to be considered by the jury as part of the compensation. Speaking of such profits *Chief Justice Bleckley,* in *Kenny v. Collier,* 79 Ga., 743, once said: "If anything is speculative, remote and contingent, it is the net income of a business never begun. That anticipated profits from a business intended to be carried on by the plaintiff upon the premises cannot be allowed, is as well settled as anything can be in an age of legal skepticism," citing *Giles v. O'Toole,* 4 Barbour, 261; *Greene v. Williams,* 45 Ill., 208, and other cases. "The recovery of profits which might have been made in a new business cannot be sustained, because it cannot be proven that they would have been realized." Sedgwick on Damages, section 183, and cases cited; 3 Sutherland on Damages (3 Ed.), p. 2136; *Trust Co. v. Mfg. Co.,* 77 Md., 202-235; *Ice Co. v. Jenkins,* 58 Ill. App., 519. But we do not see why the case of *Jones v. Call,* 96 N. C., 337, which discusses and applies the principle we have been considering to a case identical with this in its main features, is not decisively against the plaintiff's contention. There it appeared that the plaintiff, a manufacturer of patented tobacco machines, was stopped from manufacturing by the wrongful act of the defendant, and it was held that, while he could include in his damages for the wrong profits on machines already sold but not manufactured, he could not recover estimated profits of the business as they were too speculative, conjectural and remote to constitute a basis for computing damages. Such anticipated profits, it was said, involve too

many contingencies, the failure of any one of which might prevent their realization. They are not, therefore, susceptible of exact ascertainment or of being proved with reasonable certainty. We are unable to distinguish the two cases. So in *Eisenlohr v. Swain,* 35 Pa. St., 107, where the defendants had failed to advertise a sale as they had contracted to do, it was held that the plaintiff could not recover for any loss of a better bargain than he made at the sale, as it was speculative. It could not be known how many bidders would have attended the sale if it had been advertised, or whether they would have come, and if any, how many. The supposed profit which he alleged was prevented by the defendants' wrong, was too contingent and illusory. The case of *Stevens v. Yale,* 72 N. W., 5, was much like the one last cited. The defendant failed to advertise, as she had contracted to do, that her wares could be purchased at the plaintiff's drug store, but inserted in her advertisement the name of another druggist. He sought to recover the profits he would have made out of the advertisement contracted for. They were ruled out, as too uncertain and conjectural for a safe estimate of his loss.

A party who has broken his contract cannot, we admit, escape liability because of the difficulty there may be in finding a perfect measure of damages. In this case it appears that the jury, by their verdict, have said that the defendant violated the contract without any just cause or legal excuse. The claim that it was to have free space in the exposition building was either negatived by the jury or it was found by them, upon the evidence, of which there was an abundance to support the finding, that the free space could have been had for the asking. While the bad faith of the defendant would ordinarily entitle it to little consideration from the court, it cannot have the effect to reverse a well settled rule of law, which must be general in its application. We should administer the law as we find it. Its proper administration will sometimes apparently work individual hardship, but this is true

of all general rules.  It is a much less evil than to construe
it to meet the supposed injustice of the particular case or
merely to redress a wrong, because we may think it is of so
grievous a nature that it should be, in this way, specially
rebuked, without regard to the strict principles of the law
which have been adopted for all cases.  "It is then an estab-
lished rule to abide by former precedents, *stare decisis,* where
the same points come again in litigation, as well to keep the
scales of justice even and steady, and not liable to waver
with every new judge's opinion, as also because, the law in
that case being solemnly declared and determined, what be-
fore was uncertain and perhaps indifferent, is now become a
permanent rule, which it is not in the breast of any subse-
quent judge to alter or swerve from according to his private
sentiments; he being sworn to determine, not according to
his own private judgment, but according to the known laws
and customs of the land,—not delegated to pronounce a new
law, but to maintain and expound the old one—*jus dicere et
non jus dare.*"  Broom's Legal Maxims (8 Ed.), p. 147.
The defendant, it is true, has wilfully broken the contract
at a time too late for the plaintiff to repair the wrong or
retrieve the resulting loss, but this should not change the
rule of law, although it may justly provoke our condemnation
of the act.  "Our duty," said *Baron Alderson,* "is plain.  It
is to expound and not to make the law,—to decide on it as we
find it, not as we may wish it to be."  *Miller v. Salomons,* 7
.Ex., 541.  It is not our province to invent new rules for
avoiding hardship, however unjustly we may think a party
has been dealt with, but to discover and be governed by those
rules which were adopted by our predecessors for their guid-
ance.  The authorities we have cited strongly support our
conclusion, some by direct similitude and others by conse-
quential reasoning and clear deduction, and as they are quite
uniform to the same point, they ought to have weight with
us and be respected as precedents, in order that the law may

be known. The perfect agreement of many judges upon one and the same proposition, is cogent proof of its correctness.

We have examined the cases cited by the learned and able counsel for the plaintiff in their excellent brief and in the argument before us, and do not think that, with one or two exceptions, they conflict at all with our view. Those that do so conflict, are not in accord with the decisions of this court nor with the great weight of authority upon the subject, if their value as precedents is not also impaired by later expressions of the courts where they were decided.

There was error in the charge of the court upon the fourth issue. The verdict will stand as to the other issues but, as to the fourth, a new trial is awarded.

New Trial.