WILLIAM A. TILLIS, SR. v. CALVINE COTTON MILLS, INC., A CORPORA-
TION, AND LEON SALKIND, AND CALVINE COTTON MILLS, INC., A
CORPORATION, v. WILLIAM A. TILLIS, SR.

(Filed 16 December, 1959.)

**1. Contracts § 21—**

Each party to an executory contract impliedly promises not to do
anything to prejudice the other in the performance of his part of the agree-
ment and where one party does an act which makes performance on the
part of the other party impossible, such other party may treat such re-
nunciation as a breach and sue for his damages at once, provided the
renunciation covers the entire contract.

**2. Contracts § 27—**

Evidence tending to show the existence of a contract between the
parties and that defendant performed an act rendering it impossible
for plaintiff to perform his part of the agreement repels nonsuit, since
such act constitutes a breach of the contract by defendant entitling
plaintiff to nominal damages at least.

**3. Contracts §§ 24 and 27—**

Where plaintiff brings action on a contract against two defendants
but nonsuit is allowed as to one of them upon plaintiff's evidence tend-
ing to show that the agreement was made with the other alone, non-
suit as to such other defendant on the ground of variance is properly
denied, since the joinder of the unnecessary party in no way affects
the proof of the cause of action against the other.

**4. Abatement and Revival § 8—**

Where a contract carrier brings an action for damages for the loss
of profits resulting from the shipper's breach of a contract for carriage
of goods by wrongfully seizing plaintiff's vehicle in claim and delivery,
nonsuit should be entered upon his counterclaim thereafter filed in the
claim and delivery setting up the identical grounds for damage, the
pendency of the prior independent action having been pleaded by reply
in the claim and delivery proceedings.

**5. Claim and Delivery § 5—**

If the jury should determine that plaintiff's seizure of the chattel in
claim and delivery was wrongful, but the return of the chattel is im-
possible, the deterioration of the chattel while in plaintiff's possession
is not an element of damages, but the measure of damages for the
wrongful taking is the value of the chattel at the time it was seized
by the sheriff, with interest. G.S. 1-230, G.S. 1-475.

**6. Contracts § 29—**

In order to recover substantial damages for breach of an executory
contract, plaintiff must offer evidence tending to show with reasonable
certainty not only the amount of damages but also that the items of

damage claimed naturally resulted from the breach of the contract and were within the contemplation of the parties at the time the contract was executed.

7. **Same—**

Ordinarily the measure of damages for breach by the shipper of an executory contract for the carriage of goods is the revenue the carrier would have received for the services less the cost and expenses of transportation.

8. **Same: Evidence § 35—**

In an action by a contract carrier to recover for the breach by the shipper of an executory contract for the carriage of goods, it is error to permit the plaintiff to testify as to what net profit he would have realized from the contract in the absence of evidence as to the cost and expenses involved in the hauling of the goods, including wages, repair costs, fuel, taxes, insurance, etc., since in the absence of evidence of the predicate facts plaintiff's testimony as to the amount of profits of which he was deprived amounts to no more than a mere guess or opinion.

9. **Trial § 31b—**

It is not sufficient for the court to state merely the general law applicable to the controversy but it is required that the court apply the law to the various factual situations adduced by the evidence.

10. **Contracts § 29—**

In an action to recover damages for a breach of an executory contract, it is not sufficient for the court to state the general rule that plaintiff is entitled to recover such damages as fairly and naturally arise as a result of the breach which were in the contemplation of the parties at the time of the execution of the contract, but the court should instruct the jury with particularity as to what is to be considered in arriving at the probable net profit of which plaintiff was deprived as a result of defendant's breach of the agreement.

11. **Same—**

In an action to recover loss of profits arising from the breach by the shipper of an executory contract for the carriage of goods, not only should all items of expense which would necessarily arise in the performance of the contracts by the carrier be deducted from the contract price, but also, where the contract contemplates that plaintiff carrier himself would devote his full time in performing the agreement, the earnings by plaintiff in other employment during the contract period should be deducted.

12. **Evidence §§ 15, 58— Evidence having sole purpose of inciting prejudice or sympathy is incompetent.**

In this action against a corporation for breach of an executory contract there was no allegation of fraudulent conveyance of property by

the corporation. *Held:* The cross-examination of the president of defendant corporation to establish that he was an officer and stockholder of the defendant corporation suffices for the purpose of showing his interest and bias, and the action of the court in permitting the further cross-examination of the witness in regard to the subsequent merger of the defendant corporation with another corporation and the interest of the witness in other corporations elsewhere, tending to suggest wrongdoing on the part of the corporation and the president, is error, since such matter is wholly irrelevant and its only effect was to excite prejudice against defendant or sympathy for plaintiff.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by Calvine Cotton Mills, Inc., from *Froneberger, J.,* November 3, 1958 Term, of MECKLENBURG.

There are two cases involved on this appeal.

Calvine Cotton Mills, Inc., (hereinafter called "Calvine") instituted an action against William A. Tillis, Sr. (hereinafter referred to as "Tillis") on 30 March 1950. Summons and claim and delivery proceedings were issued and duly served. Thereafter Calvine filed complaint and alleged that it was the owner of a tractor-trailer combination, Tillis had wrongfully taken possession thereof and had converted same to his own use. Tillis previously had been employed by Calvine and while so employed had caused repairs to be made to the tractor-trailer in the amount of $1837.48 without authority and against Calvine's orders and Calvine had been required to pay for these repairs. Calvine asked for possession of the tractor-trailer and judgment against Tillis in the amount of $1837.48. The sheriff took the tractor-trailer from Tillis and delivered it to Calvine when Tillis failed to make bond for retention thereof.

Before answering the complaint in the claim and delivery suit, Tillis filed an independent action against Calvine and Leon Salkind, president of Calvine. Summons was issued 26 April 1950 and duly served. Tillis alleged in his complaint, in substance, that Calvine was engaged at a plant in Charlotte, N. C., in the manufacture of textile products which were shipped north and there marketed; that Salkind and Calvine's stockholders owned mills in Connecticut which shipped some of their products south; Tillis, under a prior agreement, had conveyed to Calvine and Salkind a tractor-trailer (the same one involved in Calvine's claim and delivery suit); on 28 March 1950, Tillis entered into a contract with Calvine and Salkind whereby the tractor-trailer was to be reconveyed to Tillis and Tillis was to haul by motor truck the entire output of Calvine Mills to the mills in Connecticut and the part of the output of the mills in Connecticut which was to be shipped south, at the rates published

by the Interstate Commerce Commission; from the freight thus received. Tillis was to repay Calvine an indebtedness of $8,646.00, at the rate of 30 cents per hundred weight of goods hauled; the contract was to continue in force for one year or until full repayment of the indebtedness was made if more than a year was required therefor; the tractor-trailer was conveyed to Tillis pursuant to the contract; Tillis prepared for a trip north and drove the tractor-trailer to the Charlotte plant ready to load for the first trip; it was then demanded for the first time that Tillis give a chattel mortgage on the equipment to secure the debt he owned Calvine—this being no part of the original agreement; Tillis countered with a proposal that the entire contract be put in writing and this was refused; Calvine and Salkind then repudiated the contract, declined to permit Tillis to perform his agreement and caused the equipment to be seized by claim and delivery; Tillis would have made a net profit of $30,260.08 under the contract and he was at all times ready, able and willing to carry out the contract on his part. Tillis prayed for $30,260.08 actual damages and $10,000.00 punitive damages.

Tillis also filed answer to Calvine's complaint in the claim and delivery action, denied the material allegations thereof and pleaded as a counterclaim the breach of the contract in substantially the same language as in the separate action referred to in the preceding paragraph. He alleged in the counterclaim that he had been damaged $1,000.00 per month because of seizure of the tractor-trailer and $200.00 per month for "deterioration in the use of the tractor and trailer" and that he was "being damaged in the amount of not less than $1200.00 per month by reason of the wrongful conduct on the part of the plaintiff (Calvine) in breaching the contract as aforesaid by wrongfully taking possession of defendant's property and by converting them to its own use."

Calvine and Salkind answered the complaint in Tillis' action and denied the material allegations. Calvine replied to Tillis' counterclaim and asked for dismissal thereof on the ground that it stated the same cause of action as that contained in Tillis' independent action.

The two cases were consolidated for trial. Tillis and Calvine offered evidence. The court nonsuited the Tillis action as to the defendant Leon Salkind. In Calvine's suit the jury, upon the issues submitted, found that Calvine was not the owner of the tractor-trailer and had wrongfully seized it and awarded damages of $4000.-00 to Tillis. In the Tillis suit the jury, upon the issues submitted, found that the contract had been made as alleged, it was breached

by Calvine, and Tillis is entitled to recover $20,000.00 for the breach.

From judgments, conforming to the verdicts, Calvine appealed and assigned errors.

*Clayton & London for Calvine Cotton Mills, Inc., appellant.*
*Carswell & Justice and Richard E. Thigpen, Jr., for William A. Tillis, Sr., appellee.*

MOORE, J.  This is the fourth time this case has been here. See *Tillis v. Cotton Mills,* 236 N.C. 533, 73 S.E. 2d 296; *Tillis v. Cotton Mills,* 238 N.C. 124, 76 S.E. 2d 376; and *Tillis v. Cotton Mills,* 244 N.C. 587, 94 S.E. 2d 600.

At the close of the evidence Calvine moved for judgment of involuntary nonsuit. The court properly overruled the motion. Parties to an executory contract for the performance of some act or services in the future impliedly promise not to do anything to the prejudice of the other inconsistent with their contractual relations and, if one party to the contract renounces it, the other may treat renunciation as a breach and sue for his damages at once, provided the renunciation covers the entire performance to which the contract binds the promisor. *Pappas v. Crist,* 223 N.C. 265, 268, 25 S.E. 2d 850; *Edwards v. Proctor; Proctor v. Edwards,* 173 N.C. 41, 43-44, 91 S.E. 584. Tillis gave testimony of a contract, breach thereof, and damages. "In a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least." *Bowen v. Bank,* 209 N.C. 140, 144, 183 S.E. 266.

Calvine contends that Tillis alleged a contract with Salkind and Calvine, testimony at the trial showed only a contract with Calvine and this is a fatal variance that justifies nonsuit. We have carefully examined the cases cited by appellant in support of this proposition. They correctly state the law with respect to the factual situations therein presented but are not germane to the case at hand. In the case at bar, if there had in fact been a contract in which Calvine and Salkind were jointly bound, Tillis might at his option have sued both or only one. G.S. 1-72. "Under statutory provisions . . . authorizing actions to be brought against any one or more of the parties to a joint contract, proof of a several contract is not fatal, although a joint contract is alleged." 17 C.J.S., Contracts, section 576, p. 1214. Under the facts in the case *sub judice* the existence of Salkind as a party is not essential to any material element of the entire contract between Calvine and Tillis. Therefore, the variance complained of is not ground for nonsuit.

There was also motion for nonsuit of the counterclaim of Tillis in the claim and delivery action. The court was in error in overruling this motion. The counterclaim is bottomed upon the breach of the hauling contract. It alleges as completely the breach of the contract as does the independent suit. And it states in part that Tillis was "damaged in the amount of not less than $1200.00 per month by reason of the wrongful conduct on the part of the plaintiff (Calvine) in breaching the contract . . ." The counterclaim is in every particular the same suit as the independent action theretofore filed by Tillis to recover for breach of contract. Calvine's reply properly alleged that a suit was pending on the same cause of action. The court should have dismissed the counterclaim. McIntosh, North Carolina Practice and Procedure, 2d Ed., section 236 (4), Vol. 1, p. 671.

Even if the counterclaim could be construed as a cause of action for damages for deprivation of the use of the tractor-trailer, the result is the same. There is no evidence as to damages in this respect other than the evidence relating to the breach of the contract. Furthermore, Tillis may not recover damages for breach of the contract involving the use of the equipment and at the same time recover damages for being deprived of its use in other connections. To permit him to do so would constitute double damages since, in the contract upon which he relies, the constant use of the tractor-trailer was contemplated in the hauling for Calvine.

It is true that Tillis alleged in his counterclaim that he was damaged in the sum of $200.00 per month for "deterioration in the use of the tractor-trailer." Upon the facts in this case deterioration in use by Calvine is not an element of damages. The tractor-trailer cannot be returned. If upon a new trial it should be determined by the jury that Calvine was not the owner and was not entitled to the possession of the equipment, the measure of damages for the wrongful taking is the value of the tractor-trailer at the time it was seized by the sheriff, with interest. G.S. 1-230 and G.S. 1-475. *Credit Corp. v. Saunders*, 235 N.C. 369, 371, 70 S.E. 2d 176; *C. I. T. Corporation v. Watkins*, 208 N.C. 448, 450, 181 S.E. 270. Attention is directed to the evidence in the case at bar that the tractor-trailer was sold under foreclosure by a mortgagee thereof to satisfy a debt due by Tillis. If true, judgment in favor of Tillis in this action should be reduced by the amount of the mortgage indebtedness, not to exceed the amount for which the equipment sold at the foreclosure sale. This is true for the reason that Tillis has had the benefit thereof in discharge of or as a credit on the indebtedness due by him to the mortgagee. The determination of the facts here discussed is, of course, for the jury. If Tillis is so advised, he may move to amend

TILLIS v. COTTON MILLS AND COTTON MILLS v. TILLIS.

his answer in the claim and delivery suit so as to make proper allegations with reference to matters discussed in this paragraph.

While Tillis was testifying in his own behalf, his counsel propounded to him the following hypothetical question:

"Q. Now, based on your experience in the business of hauling goods in your own equipment, do you have an opinion satisfactory to yourself as to what net profits you would have made from your contract with Calvine Cotton Mills to haul from 85,000 to 90,000 pounds of unfinished cotton goods from Charlotte to Niantic, Connecticut, per week and return trips of 20,000 pounds each trip for these three trips a week that you would make up there, of finished cotton goods going to West Virginia, Kentucky and North and South Carolina on your return trip to Charlotte, had you been allowed to perform that contract for the period of a year?"

Calvine objected and the court overruled the objection. This is the basis of Calvine's twelfth assignment of error. Tillis answered: "Yes, from $30,000 to $31,000 a year." The court erred in overruling the objection.

In connection with the twelfth assignment of error, we also consider and discuss the seventy-fourth assignment. This relates to the court's instruction to the jury with reference to damages and the measure of damages in this case. The court instructed the jury as follows: "When two parties have made a contract, which one of them has broken, the damage which the other party is entitled to receive in respect to such breach of contract should be such sum as may fairly and reasonably be considered either arising naturally, that is according to your account of things, from such breach of contract, or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it." As a general statement of law, the instruction is correct. This was the only rule given for the direction of the jury on the question of damages. Its fault lies in its inadequacy as a specific guide for the jury in considering the evidence at the trial. It is necessary that the court state the law arising on the various phases of the evidence. *Wilson v. Wilson*, 190 N.C. 819, 821, 130 S.E. 834.

"The general rule is that a party to a contract, who has been injured by the breach, is entitled as compensation therefor to be placed, in so far as this can be done by money, in the same position he would have occupied if the contract had been performed, and where the breach of contract consists in preventing its performance, the party injured, on proper proof, may recover the profits he would have realized had the contract not been breached.

" 'The amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for its breach. Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed.' *Machine Co. v. Tobacco Co.*, 141 N.C. 284, 53 S.E. 885." *Chesson v. Container Co.*, 215 N.C. 112, 115, 1 S.E. 2d 357.

Where the action is for gains prevented by breach of contract, the plaintiff must show by the greater weight of the evidence that he was ready, willing and able to perform on his part and if he fails to do so, he may not recover substantial damages but may recover only nominal damages. *Baird v. Ball*, 204 N.C. 469, 168 S.E. 667 (headnote). For the breach of an executory contract plaintiff may recover only such substantial damages as can be ascertained and measured with reasonable certainty. *Perkins v. Langdon*, 237 N.C. 159, 171, 74 S.E. 2d 634. ". . . (D)amages must be certain, and this certainty which is required does not refer solely to their amount, but also to the question whether they will result at all from the breach." *Machine Co. v. Tobacco Co.*, 141 N.C. 284, 290, 53 S.E. 885. Absolute certainty is not required, but evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion. *Unruh v. Smith* (Cal. 1954), 267 P. 2d 52. Ordinarily the measure of damages for breach of an executory contract for transporting goods, where the breach prevents plaintiff from hauling the goods, is the revenue plaintiff would have received for the services less the costs and expenses of transporting the goods.

If any of the factors involved in revenue and costs are estimated, the estimates must be based on facts. *Goforth v. Smith*, (Okla. 1952), 244 P. 2d 304. A witness will not be permitted to give a mere guess or opinion, unsupported by facts, as to the amount of damages arising upon a breach of contract. The amount of damages is the ultimate issue to be determined by the jury. It is incumbent upon the plaintiff to present facts, as to all reasonable factors involved, that the jury may have a basis for determining damages. *Rankin v. Helms*, 244 N.C. 532, 94 S.E. 2d 651; *Norwood v. Carter*, 242 N.C. 152, 87 S.E. 2d 2.

In the *Rankin* case, *supra*, plaintiff sued defendant contractor for damages for breach of contract in construction of a residence and alleged that the construction was not completed and some of the

work had not been done according to contract. Plaintiff was permitted to testify that defendant was indebted to him in a specified amount without having offered evidence of the cost of completing the building and without factual basis for the testimony. The Court said: "It is manifest that plaintiff's answer . . . is, if not a mere guess, a statement of his mere opinion or conclusion as to the amount of damages he has suffered, where no proper basis for the receipt of such evidence has been shown." In the *Norwood* case, *supra*, plaintiff, a widow, sued defendant for breach of his contract to provide for her needs during the rest of her life. She had conveyed a tract of land to defendant in return for his promise to so provide for her. Defendant had breached the contract. Referring to damages the Court said, quoting from 25 C.J.S., 496: "However, where actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they can be computed. No substantial recovery may be based on mere guesswork or inference; without evidence of facts, circumstances, and data justifying an inference that the damages awarded are just and reasonable compensation for the injury suffered."

We assume that some factual basis was laid for determining the total revenue which might have been reasonably expected under the contract in the instant case, though the freight rates, the routing and destination of goods to be hauled on the trips south are somewhat *nebulous*. According to the evidence, plaintiff had one tractor-trailer combination which could make one and one-half trips per week. Another would be required. He relied on Kilgo Transfer Co., Inc., a common carrier of freight by truck, to furnish the additional equipment and drivers. Would Kilgo share profits with Tillis as to this extra service? This question is unanswered. There is no evidence as to the costs and expenses involved in the hauling of the goods. In order to arrive at a reasonable conclusion, the jury must hear facts with reference to the cost of wages, equipment repair, reserve for equipment replacement, gasoline, oil, greasing and servicing equipment, the charge to be paid for the use of I. C. C. rights of regular carriers through which Tillis must have operated, license and property taxes, tolls, social security taxes, cargo and liability insurance, workmen's compensation insurance and other similar costs. Besides, the 30 cent per hundred weight to be deducted for discharge of Tillis' indebtedness to Calvine must either be added to costs or subtracted from revenue.

There is another matter related to damages which must be considered. The case was tried on the theory that Tillis would devote his time as a driver. He is required by law to exercise reasonable diligence to

minimize damages. *Chesson v. Container Co., supra,* at page 114. He testified that he was and remained employed during the year following the breach of the contract. His earnings during this period should be deducted from any damages which might be recovered by him in this action.

The matters discussed in the five preceding paragraphs were not adequately explained to the jury either in giving the contentions or in applying the law to the evidence. G.S. 1-180. The hypothetical question was inadmissible for no proper factual basis had been laid therefor.

Since there must be a new trial, we advert to one final matter involved on appeal. Over the objection of Calvine, counsel for Tillis was permitted to question Salkind at great length concerning the merger of Calvine Cotton Mills, Inc., with another corporation, the interest of Salkind in Calvine and the resultant corporation, the names of the stockholders in the resultant corporation, the present stockholders, what interest Calvine had in corporations in Connecticut and elsewhere and many other similar matters. In addition, the court, over objection of Calvine, permitted counsel for Tillis to argue these matters at length to the jury and to make statements, such as: "Now there is more confusion about these companies than anything I have ever heard in my life. . . . They have testified, Mr. Salkind, about Calvine Mills and Calvine Cotton Mills, and Smitherman Mills and Marshall Mills and Botany, which is a conglomeration that would take a Philadelphia lawyer to figure out and it would take more than nine years. . . . What was the purpose of picking up everything that a mill had after it was sued and moving it over to another mill and issuing the same kind of stock that they had in that mill? Why was that necessary? What was the purpose of it? What were they doing it for? That is something in a thousand languages." The evidence adduced by the interrogations referred to and the argument of counsel were not pertinent to the issues in these cases and were prejudicial. ". . . (I)f the only effect of the evidence is to excite prejudice or sympathy, its admission may be ground for a new trial . . ." Stansbury, North Carolina Evidence, sec. 80, p. 143; *Shepherd v. Lumber Co.,* 166 N.C. 130, 81 S.E. 1064.

Tillis contends that the evidence in question was competent to show the interest and bias of Salkind. Proof that he was president and stockholder of Calvine would have sufficed for this purpose. There was no allegation of fraudulent conveyance of property to defeat creditors. Yet the line of questioning suggests strongly some wrongdoing on the

part of Calvine and Salkind and is calculated to deprive them of a fair and impartial trial.

As to both cases there must be a

New trial.

HIGGINS, J., took no part in the consideration or decision of this case.