HARRY E. MUNN, JR., PLAINTIFF v. NORTH CAROLINA STATE UNIVERSITY, DEFENDANT

No. COA04-894

(Filed 6 September 2005)

**Contracts— breach—damages—ready, willing and able to perform—new trial**

The trial court should have granted a new trial for damages in a breach of contract action where a professor who agreed to give up tenure and work part time as part of a Phased Retirement Program presented evidence of the salary he would have earned but for the breach. Defendant contends that plaintiff was not ready, willing, and able to perform the contract, but the jury was never instructed on this issue.

Judge JACKSON dissenting.

Appeal by plaintiff from an order entered 19 December 2003 by Judge J. B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 2 March 2005.

*Unti & Lumsden, L.L.P., by Michael L. Unti and Sharon L. Smith, for plaintiff-appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorneys General John P. Scherer II and Kimberly D. Potter, for defendant-appellee.*

HUNTER, Judge.

Harry E. Munn, Jr. ("plaintiff") appeals the trial court's denial of his motion for judgment notwithstanding the verdict or for a new trial based upon a jury award of inadequate damages. After careful review, we vacate the judgment below and remand for a new trial on damages only.

**MUNN v. N.C. STATE UNIV.**

[173 N.C. App. 144 (2005)]

The pertinent facts tend to indicate that plaintiff was an associate professor in the Department of Communications at North Carolina State University ("NCSU") for twenty-eight years. In November 1998, plaintiff agreed to enter into the NCSU Phased Retirement Program. Under this plan, plaintiff would relinquish his tenured status, enter into a contractual relationship with NCSU, and work for NCSU on a part-time basis for three academic years. In exchange, NCSU would pay plaintiff one-half of the salary he earned during his last nine or twelve month term prior to entering the phased retirement program. The reemployment agreement stated in pertinent part:

> Upon the acceptance of my application to participate in the Program, NC State University is obligated to offer me reemployment for a term of three (3) years. My reemployment shall be on a half-time basis (or the equivalent thereof). Compensation during the period of reemployment shall be one-half the salary I was earning during my last 9- or 12-month term of full-time employment prior to entering the Program. I will continue to be subject to performance reviews on reemployment. Subject to any limitations imposed by the State Retirement System, I will be eligible for salary increments and merit pay increases based on annual evaluations.
>
> The specific duties which I shall perform under this agreement are as follows:
>
> 1999-2000 PRP FALL TERM: TWO 3 SEMESTER HOUR CLASSES
>
> 1999-2000 PRP SPRING TERM: ONE 3 SEMESTER HOUR CLASS
>
> 2000-2001 PRP FALL TERM: THREE 3 SEMESTER HOUR CLASSES
>
> 2001-2002 PRP FALL TERM: THREE 3 SEMESTER HOUR CLASSES
>
> *The department will make every effort to meet Dr. Munn's teaching requests as it does for all of its faculty members.
>
> . . .
>
> I will remain subject to The Code of The University of North Carolina.

The reemployment agreement was signed by plaintiff on 21 November 1998. The department head signed the agreement on 23 November 1998, the Dean signed the agreement on 4 January 1999

and the Provost and Vice Chancellor signed the agreement on 5 January 1999.

At the end of the Fall 1998 semester, before the agreement was signed by all parties, a student complaint was lodged against plaintiff alleging sexual harassment by inappropriate comments to the complainant and inappropriate statements to other female students in the class. While the investigation into the complaint was proceeding, the reemployment agreement was signed. After the agreement was signed, plaintiff received a letter indicating his conduct during the Fall 1998 class was highly inappropriate and unprofessional. The letter also indicated that a procedure would be implemented to monitor his classes. Another student complaint was lodged against plaintiff after the Spring 1999 semester. This student complained about her grade and also indicated plaintiff made inappropriate comments during the class.

Instead of implementing a monitoring procedure, NCSU decided to remove plaintiff from the classroom and offered plaintiff an alternative assignment in which he would compile information for an alumni database. Plaintiff declined the alternative assignment and NCSU did not allow plaintiff to teach any classes during the 1999-2000 term. However, plaintiff received his salary for that year. During the 1999-2000 term, plaintiff moved to Florida. He testified he did not intend to return to North Carolina except to teach his classes. During the summer of 2000, NCSU notified plaintiff that he would no longer receive his salary, but that if he accepted the alternative assignment, his salary would be reinstated.

Plaintiff sued NCSU for breach of contract and provided evidence of $43,228.00 in damages, the total amount he would have been paid during years two and three of the reemployment agreement. At trial, the jury decided NCSU breached the reemployment agreement, but only awarded $1.00 in damages. Plaintiff filed a motion for judgment notwithstanding the verdict or for a new trial based upon an award of inadequate damages. NCSU also moved for a judgment notwithstanding the verdict or for a new trial on the issue of breach of contract. The trial court denied both motions. Plaintiff appeals; however, NCSU did not appeal.

Plaintiff contends the trial court abused its discretion in denying his motion for judgment notwithstanding the verdict or for a new trial because he proved damages of $43,228.00 by a preponderance of the evidence.

A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for directed verdict. Like a motion for directed verdict, a motion for judgment notwithstanding the verdict tests the legal sufficiency of the evidence to take the case to the jury. The motion for judgment notwithstanding the verdict "shall be granted if it appears that the motion for directed verdict could properly have been granted." G.S. 1A-1, Rule 50(b). Accordingly, the test for determining the sufficiency of the evidence is the same under both motions.

In considering a motion for judgment notwithstanding the verdict, all the evidence must be considered in the light most favorable to the nonmoving party. The nonmovant is given the benefit of every reasonable inference that may legitimately be drawn from the evidence and all contradictions are resolved in the nonmovant's favor. If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for directed verdict and any subsequent motion for judgment notwithstanding the verdict should be denied.

*Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 241-42, 446 S.E.2d 100, 102-03 (1994) (citations omitted); *see also* N.C. Gen. Stat. § 1A-1, Rule 50(b) (2003).

In contrast, "[a] motion for a new trial on the grounds of inadequate damages is addressed to the sound discretion of the trial court . . . ." *Pelzer v. United Parcel Service*, 126 N.C. App. 305, 311, 484 S.E.2d 849, 853 (1997). Reversal on "any ground" should be limited to "those exceptional cases where an abuse of discretion is clearly shown." *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 484, 290 S.E.2d 599, 603 (1982) (emphasis omitted). "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E.2d at 605.

"In order to prevail on a claim for breach of contract, a plaintiff's evidence must show a valid contract existed between the parties, the defendant breached the terms of the contract, the facts constituting the breach, and damages resulted from the breach." *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 10, 545 S.E.2d 745, 751 (2001). The jury determined NCSU breached the contract, and NCSU did not appeal. Accordingly, the only issue

before us is whether the trial court erroneously denied plaintiff's motions for judgment notwithstanding the verdict or for a new trial on the issue of damages.

> "The general rule is that a party to a contract, who has been injured by the breach, is entitled as compensation therefor to be placed, in so far as this can be done by money, in the same position he would have occupied if the contract had been performed, and where the breach of contract consists in preventing its performance, the party injured, on proper proof, may recover the profits he would have realized had the contract not been breached.["]

> " 'The amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for its breach. Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed.' *Machine Co. v. Tobacco Co.*, 141 N.C. 284, 53 S.E. 885."

*Tillis v. Cotton Mills and Cotton Mills v. Tillis*, 251 N.C. 359, 365-66, 111 S.E.2d 606, 612 (1959) (citations omitted).

Plaintiff presented evidence that pursuant to the reemployment agreement, he was to be paid one-half of his salary for three years. He testified that his salary prior to entering into the phased retirement program was approximately $42,000.00 per year. Plaintiff also presented as evidence a 28 July 1999 letter from the Provost and Vice Chancellor for Academic Affairs that indicated his salary during the three-year contract would be $21,614.00 per year. NCSU did not present any evidence contradicting these amounts. As plaintiff received his salary for the 1999-2000 school term, he contended and provided proof that he would be entitled to damages of $43,228.00 for the remaining two years of the contract. Therefore, plaintiff contends the jury erroneously awarded nominal damages and the trial court should have either granted the motion for judgment notwithstanding the verdict or for a new trial.

NCSU contends the trial court properly denied plaintiff's motions because plaintiff did not prove he was ready, willing, and able to per-

form his teaching duties, and therefore, he was not entitled to substantial damages. As explained by our Supreme Court in *Tillis*:

> Where the action is for gains prevented by breach of contract, the plaintiff must show by the greater weight of the evidence that he was ready, willing and able to perform on his part and if he fails to do so, he may not recover substantial damages but may recover only nominal damages.

*Id.* at 366, 111 S.E.2d at 612.

The evidence indicates that plaintiff moved to Florida during the 1999-2000 school term. He testified that he did not intend to move back to North Carolina, but that he would have returned to NCSU to perform his teaching duties. Based upon this evidence, the jury could have determined whether plaintiff was ready, willing, and able to perform the contractual duties. However, the jury was not instructed on this issue and this Court does not make factual determinations regarding the amount of damages to which a party is entitled. *Tillis*, 251 N.C. 359, 111 S.E.2d 606. Depending upon the jury's resolution of this issue, plaintiff would have been entitled to either substantial or nominal damages. Thus, this case should be remanded for a new trial on the issue of damages.

The dissent argues, however, that this case should not be remanded because plaintiff neither objected to nor assigned error to the jury instructions. This appeal does not challenge the jury instructions. Rather, N.C. Gen. Stat. § 1A-1, Rule 59 provides that a new trial may be granted for:

(5)  Manifest disregard by the jury of the instructions of the court;

(6)  Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;

(7)  Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law[.]

N.C. Gen. Stat. § 1A-1, Rule 59(a)(5)-(7) (2003). Thus, the issue before this Court is not whether the trial court correctly stated the law. Rather, the issue for review is whether the jury manifestly disregarded the instructions of the trial court. Indeed, plaintiff does not contend the jury instructions were incorrect. Plaintiff argues that he presented uncontradicted evidence of actual damages and that pursuant to the jury instructions given to the jury, he was entitled to $43,228.00 in damages.

The dissent also states that plaintiff should have requested an instruction regarding whether he was ready, willing, and able to perform under the contract. Defendant presented this argument as a reason for affirming the judgment below. However, because the jury did not consider this issue, we cannot affirm the judgment on this basis. As explained, pursuant to our Supreme Court's decision in *Tillis*, this case should be remanded for a new trial on the issue of damages. As indicated earlier in this opinion, the jury should consider plaintiff's uncontradicted evidence of actual damages and defendant's contentions regarding whether plaintiff was ready, willing, and able to perform the contract.

In sum, plaintiff presented evidence of the salary he would have earned under the reemployment contract but for NCSU's breach of contract. As explained:

"The general rule is that a party to a contract, who has been injured by the breach, is entitled as compensation therefor to be placed, in so far as this can be done by money, in the same position he would have occupied if the contract had been performed, and where the breach of contract consists in preventing its performance, the party injured, on proper proof, may recover the profits he would have realized had the contract not been breached.["]

*Tillis*, 251 N.C. at 365, 111 S.E.2d at 612. However, NCSU contends defendant was not ready, willing, and able to perform the contract, and therefore, an award of nominal damages was appropriate. Depending upon the jury's resolution of this issue, plaintiff would be entitled to either nominal or substantial damages. Thus, we conclude the trial court abused its discretion in not awarding a new trial on damages.

Vacated and remanded for a new trial on damages only.

Judge CALABRIA concurs.

Judge JACKSON dissents in a separate opinion.

JACKSON, Judge, dissenting.

For the reasons stated below, I respectfully dissent from the majority opinion.

**MUNN v. N.C. STATE UNIV.**

[173 N.C. App. 144 (2005)]

As a preliminary matter, it must be noted that plaintiff has failed to comply with Rule 10(c) of our Rules of Appellate Procedure in preserving his assignments of error. Rule 10(c)(1) provides, in relevant part:

> A listing of the assignments of error which an appeal is predicated shall be stated at the conclusion of the record on appeal, in short form without argument, and shall be separately numbered. Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned. An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made with clear and specific record or transcript references.

Plaintiff's two assignments of error read in their entirety as follows:

1. The award of nominal damages by the jury was contrary to law and the instructions of the Court, on the grounds that evidence of Plaintiff's damages under the Phased Retirement Program contract was admitted by the Court in the Plaintiff's Case-in-Chief, constituted a sum certain under the contract, and no evidence was introduced by the Defendant to dispute that amount.

2. Denial of Plaintiff's Motion for Judgment Notwithstanding the Verdict on the ground that the jury disregarded the Court's instructions on contract damages.

Plaintiff makes no attempt to direct the attention of this Court to any portion of the record on appeal or to the transcript with any references thereto. As such his appeal must be dismissed for failure to follow our mandatory Rules of Appellate Procedure. *State v. Buchanan*, 170 N.C. App. 692, 695, 613 S.E.2d 356, 357 (2005) ("[O]ur Supreme Court [has] stated that this Court may not review an appeal that violates the Rules of Appellate Procedure even though such violations neither impede our comprehension of the issues nor frustrate the appellate process.") *See Viar v. N.C. Dep't of Transportation*, 359 N.C. 400, 610 S.E.2d 360, 360-61 (2005).

In addition, Rule 10(c)(2) sets forth the specific requirements that a party must follow when challenging the instructions given to the jury. Plaintiff has made no such challenge in this instance, yet the majority has undertaken to opine that:

the trial court had a duty, without any specific request by the parties, to instruct the jury on the law as it applies to the substantive features of the case arising from the evidence. " 'This means, among other things, that the judge must submit to the jury such issues as when answered by them will resolve all material controversies between the parties.' "

*Shields v. Metric Constructors, Inc.*, 106 N.C. App. 365, 370, 416 S.E.2d 597, 600 (1992) (citations omitted). However, as distinguished from the instant case, in *Shields*, the jury instructions were the central focus of this Court's inquiry. *Id.* at 367, 416 S.E.2d at 599.

The issue of the jury instructions raised by the majority is squarely on point with our Supreme Court's ruling in *Durham v. Quincy Mutual Fire Insurance Company*, 311 N.C. 361, 317 S.E.2d 372 (1984). In *Durham*, as in this case, the plaintiff failed to raise any objection to the court's jury instructions at trial. Nor did the plaintiff in either case "make any assignment of error to the jury charge as given." *Id.* at 367, 317 S.E.2d at 377. As noted by the Court, "[i]n order to preserve an issue for appellate review, there must be an exception in the record and the exception must be brought forward in an appropriate assignment of error." *Id.* (citing N.C.R. App. P. 10). In contrast to the instant case, in which the majority has taken up this issue upon its own initiative, in *Durham* the jury instruction issue was raised at oral argument as an issue that merited "plain error" review. The Court explicitly declined to apply the doctrine of plain error in civil cases, a practice we have followed since the *Durham* decision. *Id.*; *see In the Matter of L.M.C.*, 170 N.C. App. 676, 678, 613 S.E.2d 256, 257 (2005); *Surratt v. Newton*, 99 N.C. App. 396, 407, 393 S.E.2d 554, 560 (1990); *Harris v. Scotland Neck Rescue Squad, Inc.*, 75 N.C. App. 444, 450, 331 S.E.2d 695, 700 (1985); *Wachovia Bank & Trust Company, N.A. v. Guthrie*, 67 N.C. App. 622, 626, 313 S.E.2d 603, 606 (1984).

In this case, out of the presence of the jury, the trial judge reviewed with counsel his proposed jury instructions and provided counsel for both parties with an opportunity to object and to request additional instructions. In relevant part, the colloquy between the court and plaintiff's counsel reads as follows:

THE COURT: Does the plaintiff have any objection to what I said I would give?

MR. UNTI: Your Honor, our only question is the amount of the damages, because we think that the one half salary totals—

**IN RE T.W., L.W., E.H.**

[173 N.C. App. 153 (2005)]

Ms. Smith:   According to the document that Dr. Zahn testified about.

The Court:   I was taking him at his word. That's what he testified.

Ms. Smith:   The exact amount is $42,228.

The Court:   Well, I will strike it. I will say that he contends that they owed him for the second and third year in a substantial sum, all right?

Mr. Unti:    All right, your Honor.

The Court:   With that is there any objection to what I have said I would give?

Mr. Unti:    Not from the plaintiff.

. . .

The Court:   Does the plaintiff wish to hand up any additional written instructions to what I said I would give?

Mr. Unti:    Not additional instructions, your, Honor.

Thus, plaintiff's sole concern about the instructions to be tendered by the court was resolved by the trial judge prior to the jury instructions being given in the presence of the jury. Moreover, plaintiff made no suggestion that the court add anything to the proposed instructions. As such and for all the reasons stated above, plaintiff may present no issue on the adequacy of the jury instructions before this Court.