IN THE MATTER OF: B.B., C.B., & N.B.
No. COA05-1355
North Carolina Court of Appeals
Filed May 2, 2006
This case not for publication
Buncombe County No. 97 J 416.
Matthew J. Middleton for petitioner-appellee, Buncombe County Department of Social Services.
Hall & Hall, Attorneys at Law, P.C., by Douglas L. Hall for respondent-appellant.
Michael N. Tousey for Guardian ad Litem.
CALABRIA, Judge.
DeAnn B. ("respondent") appeals from an order of the trial court, adjudicating B.B., C.B., and N.B. ("the minor children") neglected and dependent, granting Mr. and Mrs. Belock guardianship of B.B., and granting the Buncombe County Department of Social Services ("D.S.S.") continued custody of C.B. and N.B. We dismiss respondent's appeal due to her failure to comply with the North Carolina Rules of Appellate Procedure.
In the challenged adjudication and dispositional order, the trial court made, inter alia, the following findings of fact:
5. [Respondent] is the mother of the minor children. The respondent mother was presentat this hearing and was represented by counsel. 6. The respondent mother previously stated to the Court that the putative biological father of the minor child, [C.B.] is Jose Alicea. . . . 7. The respondent mother previously stated to the Court that the putative biological father of the minor child, [N.B.] is Oscar Jijon. . . . 8. Zien Duong is the father of the minor child, [B.B.]. . . . 10. The respondent mother stipulated that the minor children are neglected and dependent children based on the allegations as contained in the juvenile petitions. Based upon these stipulations and the verified juvenile petitions, which were entered into evidence by [D.S.S.] without objection by any party, the court makes the following findings of fact. 11. On October 29, 2004, [D.S.S.] became aware that the minor children, [C.B. and N.B.] were . . . home alone with their sister, [B.B.] and the respondent mother's whereabouts were unknown since October 27, 2004. The respondent mother told her daughter, [B.B.], that she was going to run to the grocery store to buy some Hamburger Helper. She did not return to the home that night and the three children were left alone from Wednesday, October 27, 2004, to the morning of Saturday, October 30, 2004, in the home with no supervision, without any knowledge of their mother's whereabouts, and with no means by which they might contact their mother. . . . 12. [D.S.S.] has a history with this family dating back to March of 1992, which includes one substantiation of neglect. On September 10, 1997, the Department found that the respondent mother regularly left the children alone with no knowledge of her whereabouts for indefinite periods of time. The respondent mother had dropped off her two daughters [B.B. and W.B] with relatives to run some errands on a particular night, but did not return. The respondent mother was in fact in the Emergency Room at St. Joseph's Hospital that evening being treated for an overdose. The following morning, the respondent mother threatened to kill herself and her children if she lost custody of her daughters. Subsequently, the respondent mother was to begin a twelve-week intensive care substance abuse program . . . which . . . the Department learned she was not attending. On December 29, 1997, the respondent mother stole a vehicle and a checkbook, and could not be located. She was arrested and charged with auto theft and twenty-one counts of forgery on January 14, 1998. The custody of [B.B.] was then transferred . . . to her maternal grandparents. Custody of . . . [W.B.] was awarded to Ronnie Parker[.] . . . 14. [D.S.S.] has obtained information that the respondent mother leaves [B.B.] alone in the home to care for [C.B.] and [N.B.] overnight at least two to three times a week. [B.B.] has missed eight days of school this school year due to the fact that she was at home taking care of her younger siblings. . . . 15. On October 30, 2004, the respondent mother told social worker Lewis that she had met a man that lived in Lake [Junaluska], and that she was staying with him in his trailer from October 27, 2004 to October 30, 2004. She stated that she was so drunk during that stay that she had decided not to attempt to drive home. . . . The respondent mother stated that she was clean for about four years, but has been abusing crack cocaine again for the last year.
Based on these and other findings, the trial court adjudicated the minor children neglected and dependent within the meaning of N.C. Gen. Stat. §§ 7B-101(15)(9) (2005). The trial court then entered the dispositional phase and determined that it was in the best interests of the minor children that Mr. and Mrs. Belock be granted guardianship of [B.B.] and that [C.B.] and [N.B.] remain in the custody of D.S.S. Respondent appeals.
On appeal, respondent raises nine assignments of error. We initially note that respondent has withdrawn her third assignment of error; therefore, we need not address it. In her assignments oferror 1, 2, and 5-7, respondent fails to list "clear and specific record or transcript references" as required by N.C. R. App. P. 10(c)(1) (2006). Also, in her briefed argument, respondent fails to comply with the requirement of N.C. R. App. P. 28(b)(6) (2006) that "Immediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal." Respondent additionally fails to include in her appellate brief a "full and complete statement of the facts" as required by N.C. R. App. P. 28(b)(5) (2006).
In Viar v. North Carolina Department of Transportation, our Supreme Court held, "The North Carolina Rules of Appellate Procedure are mandatory and failure to follow these rules will subject an appeal to dismissal." Id., 359 N.C. 400, 401, 610 S.E.2d 360, 360 (2005). In Munn v. North Carolina State University, our Supreme Court further clarified that dismissal is warranted "even though such violations neither impede our comprehension of the issues nor frustrate the appellate process." Id., __ N.C. __, 626 S.E.2d 270 (2006), rev'g per curiam for the reasons in __ N.C. App. __, __, 617 S.E.2d 335, 339 (2005) (Jackson, J. dissenting). Our Supreme Court has recognized that violations of the North Carolina Rules of Appellate Procedure similar to the violations in the case sub judice warrant dismissal of an appeal. See Munn, supra; Viar, supra. Accordingly, we dismiss respondent's appeal based on the aforementioned rule violations. Dismissed.
Judge McCULLOUGH concurs.
Judge STEELMAN concurs with a separate opinion.
Report per Rule 30(e).
STEELMAN, Judge concurring.
I fully concur in the majority opinion, but write separately because of the "Statement of Facts" contained in the brief. This portion of the brief, in its entirety reads as follows:
The Respondent Mother has been robbed of the right to parent her children. After less than three months in the custody of the Buncombe County Department of Social Services, the trial court ceased reunification efforts with the mother, ended her visits, and made adoption the plan for the two youngest children. The Mother had no notice that a permanent plan would be entered at this, the initial adjudication and dispositional hearing.
The petitioner then took almost three months to file the written order from the hearing, so the Mother's right to appeal was impermissibly delayed. It took the trial court over a month more to enter appellate entries and deliver the tapes to the transcriptionist. In the meantime, almost four months of time that the mother could have been working towards reunification has been lost. This court must use this case as a benchmark to end not only the delay caused by Petitioners and the trial court system in these cases, but also to show Departments and trial judges that ceasing reunification and making adoption a permanent plan, three months into a case, without notice to a parent, will not be tolerated.
Rule 28(b)(5) states that this portion of the brief "should be a non-argumentative summary of all material facts underlying thematter in controversy which are necessary to understand all questions presented for review, supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits, as the case may be." N.C. R. App. P. Rule 28(b)(5) (2005).
The bombast which appellant labels as "Statement of Facts" meets none of the stated requirements for that portion of the brief, and is deficient in each of the following respects:
1) It is argumentative in tone and content throughout;
2) It fails to summarize material facts of the cases which are necessary to this Court's understanding of the controversy; and
3) It is not supported by any references to pages in the transcript or record on appeal.
See Consol. Elec. Distribs., Inc. v. Dorsey, 170 N.C. App. 684, 613 S.E.2d 518 (2005); Northwood Homeowners Ass'n v. Town of Chapel Hill, 112 N.C. App. 630, 436 S.E.2d 282 (1993); State v. Hopkins, 296 N.C. 673, 682, 252 S.E.2d 755, 761 (1979).
Much of what is contained in the "Statement of Facts" should have been in either the "Statement of the Case" or the "Argument" section of the brief. Counsel for appellant appears to believe that in order to "get the attention" of this Court that one must use outrageous language and contentions. This Court carefully reviews each case presented to it, and applies the appropriate standard of review to ascertain whether error was committed in the trial court. Counsel should understand that the purpose of the brief is to assist this Court in this task, not to obscure the facts and the law. Counsel for the appellant should be personally sanctioned for the brief submitted in this matter. N.C. R. App. P. Rule 25(b) (2005).