FREDERICK R. STANN, PLAINTIFF v. JEFFREY MARC LEVINE, DEFENDANT

No. COA05-1269

(Filed 7 November 2006)

**Appeal and Error— numerous appellate rules violations— appeal dismissed**

Plaintiff South Carolina resident's appeal from the dismissal of his lawsuit for alienation of affection and criminal conversation against a Tennessee resident based on lack of personal jurisdiction is dismissed, because plaintiff committed numerous violations of the Rules of Appellate Procedure including: (1) the line spacing in plaintiff's brief violated N.C. R. App. P. 26(g) which provides that the body of the text shall be presented with double spacing between each line of text and no more than 27 lines of double-spaced text per page, whereas plaintiff's brief contains pages with as many as 35 lines of text; (2) plaintiff's brief failed to include a statement of the grounds for appellate review as required by N.C. R. App. P. 28(b)(4) when plaintiff failed to provide either the statement of grounds for appellate review or citation of any statute permitting such review; (3) plaintiff's brief failed to contain a concise statement of the applicable standards of review for each question presented as well as any citation of authorities supporting such a standard of review as required by N.C. R. App. P. 28(b)(6); (4) although plaintiff half-heartedly attempted to comply with N.C. R. App. P. 28(b)(5) by providing sporadic record and transcript citations in the first few pages of his statement of facts, there were no citations to the record or

1

transcripts in excess of a page and a half of his brief; and (5) plaintiff failed to state the specific legal basis for his sole assignment of error as required by N.C. R. App. P. 10(c), and his statement that the trial court erred by dismissing the complaint on jurisdictional grounds was fatally overbroad, vague, and unspecific. It was unnecessary to invoke N.C. R. App. P. 2 to prevent manifest injustice to a party or to expedite decision in the public interest.

    Judge GEER dissenting.

    Appeal by plaintiff from judgment entered 5 July 2005 by Judge Laura J. Bridges in Rutherford County Superior Court. Heard in the Court of Appeals 19 April 2006.

    *Lloyd T. Kelso for plaintiff-appellant.*

    *Yelton, Farfour, McCartney, Lutz & Craig, P.A., by Leslie A. Farfour, Jr., for defendant-appellee.*

JACKSON, Judge.

    Frederick R. Stann ("plaintiff") appeals from the dismissal for lack of personal jurisdiction of his lawsuit against Jeffrey Marc Levine ("defendant") arising out of defendant's relationship with plaintiff's wife, Allison Black Stann ("Stann"). This appeal addresses whether a North Carolina superior court has personal jurisdiction to hear a South Carolina resident's claims for alienation of affection and criminal conversation brought against a Tennessee resident. We dismiss this appeal pursuant to the North Carolina Rules of Appellate Procedure.

    Plaintiff and Stann married on 3 November 1991. Although they lived in Gastonia, North Carolina for the first several years of their marriage, they moved to Sharon, South Carolina in 1996, where they lived on a horse farm until their separation in September 2003. During that time, plaintiff practiced law in Gastonia, North Carolina, with Stann working as a paralegal in the same office. Plaintiff and Stann both were issued South Carolina driver's licenses and displayed South Carolina license plates on their vehicles. Evidence tended to show plaintiff and Stann paid taxes in both North and South Carolina. Plaintiff and Stann separated on 17 September 2003.

    Two months earlier, in July 2003, Stann began corresponding with defendant, a resident of Tennessee who also was married, in connec-

**STANN v. LEVINE**

[180 N.C. App. 1 (2006)]

tion with a fictional story they were writing as part of their participation in the Single Action Shooting Society. The volume of their correspondence increased over time, with the two communicating by telephone, e-mail, and instant messaging. Ultimately, Stann and defendant began to discuss love and marriage. Some of the e-mails and telephone calls were received by Stann from defendant in North Carolina, although many were received in South Carolina. Stann and defendant did not meet in person until 27 September 2003. Subsequently, defendant and Stann engaged in numerous sexual encounters in several different states, including North Carolina.

After her separation from plaintiff, Stann first moved in with her family in Sharon, South Carolina, but in March 2004, she moved to Salisbury, North Carolina where she lives and works. Plaintiff claims that he began living in Gastonia, North Carolina in November 2003, although the record also contains evidence tending to show he maintains his residence in South Carolina at the horse farm.

On 11 June 2004, plaintiff filed a complaint against defendant, alleging alienation of affection, criminal conversation, and negligent and intentional infliction of emotional distress. On 23 August 2004, defendant filed a motion to dismiss pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure for lack of personal jurisdiction, asserting that at all pertinent times plaintiff was a resident of South Carolina and defendant was a resident of Tennessee. Affidavits from plaintiff, defendant, and Stann were filed in May and June 2005. Plaintiff also filed numerous exhibits containing e-mails between defendant and Stann prior to her separation from plaintiff, as well as telephone company bills listing Stann's calls around the time of separation. On 5 July 2005, the trial court granted defendant's motion to dismiss for lack of personal and subject matter jurisdiction. Plaintiff filed a timely appeal to this Court.

It is well-established that "[t]he North Carolina Rules of Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.' " *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401, 610 S.E.2d 360, 360 (quoting *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999)), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005); *see also Munn v. N.C. State Univ.*, 360 N.C. 353, 626 S.E.2d 270 (2006), *rev'g per curiam for reasons stated in* 173 N.C. App. 144, 150, 617 S.E.2d 335, 339 (2005) (Jackson, J., dissenting). In *Viar*, the Supreme Court observed that "[t]he majority opinion in the Court of Appeals, recognizing the flawed content of plaintiff's appeal, applied Rule 2 of the Rules of Appellate Procedure to

suspend the Rules. . . . The Court of Appeals majority asserted that plaintiff's rules violations did not impede comprehension of the issues on appeal or frustrate the appellate process." *Viar*, 359 N.C. at 402, 610 S.E.2d at 361. In reversing this Court, our Supreme Court stated that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant," and that if violations of the Rules of Appellate Procedure are overlooked by invoking Rule 2, "the Rules become meaningless." *Id.* Accordingly, "this Court may not review an appeal that violates the Rules of Appellate Procedure even though such violations neither impede our comprehension of the issues nor frustrate the appellate process." *State v. Buchanan*, 170 N.C. App. 692, 695, 613 S.E.2d 356, 357 (2005).

In the case *sub judice*, plaintiff's violations are substantial. Specifically, plaintiff commits seven violations pursuant to five separate Rules of Appellate Procedure. Each rule plaintiff violates is explicitly and clearly stated in the Rules of Appellate Procedure. First, the line spacing in plaintiff's brief violates Rule 26(g), which provides that "[t]he body of text shall be presented with double spacing between each line of text." N.C. R. App. P. 26(g) (2006). The rule reiterates the importance of line spacing with its additional requirement that "[n]o more than 27 lines of double-spaced text may appear on a page." *Id.* Plaintiff's brief, on the other hand, contains pages with as many as thirty-five lines of text.

Presuming such formatting errors may not require dismissal of the appeal, plaintiff's brief contains more significant rules violations. First, plaintiff's brief fails to include a statement of the grounds for appellate review. *See* N.C. R. App. P. 28(b)(4) (2006). "Such statement shall include citation of the statute or statutes permitting appellate review." *Id.* Plaintiff failed to provide either the statement of grounds for appellate review or citation of any statute permitting such review. *See, e.g., Hill v. West*, 177 N.C. App. 132, 133-34, 627 S.E.2d 662, 664 (2006) (dismissing the appeal because the appellant failed to include a statement of grounds for appellate review and no final determination of the parties' rights had been made pursuant to North Carolina General Statutes, section 1A-1, Rule 54). Furthermore, plaintiff's argument fails to "contain a concise statement of the applicable standard(s) of review for each question presented" as well as any citation of authorities supporting such a standard of review. N.C. R. App. P. 28(b)(6) (2006); *see, e.g., State v. Summers*, 177 N.C. App. 691, 699, 629 S.E.2d 902, 908 (declining to address one of the appellant's arguments when he failed to include a statement of the appli-

cable standard of review), *appeal dismissed and disc. rev. denied*, 360 N.C. 653, 637 S.E.2d 192 (2006).

Plaintiff's statement of the facts also violates the Rules of Appellate Procedure. Rule 28(b)(5) provides that "[a]n appellant's brief in any appeal shall contain . . . [a] full and complete statement of the facts . . ., supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits, as the case may be." N.C. R. App. P. 28(b)(5) (2006); *see, e.g., Consol. Elec. Distribs., Inc. v. Dorsey*, 170 N.C. App. 684, 686-87, 613 S.E.2d 518, 520-21 (2005) (dismissing the appeal because the appellant failed to include a full and complete statement of the facts and committed four other rules violations). Although plaintiff made a half-hearted attempt to comply with Rule 28(b)(5) by providing sporadic record and transcript citations in the first few pages of his statement of the facts, there is no citation to the record or transcripts in either of the last two paragraphs. Had plaintiff complied with the line spacing requirements, these two paragraphs, spanning forty-seven lines, would have covered in excess of a page and a half of his brief.

Finally, and perhaps most significantly, this Court has held that assignments of error that are broad, vague, and unspecific violate Rule 10(c) of the Rules of Appellate Procedure. *In re Appeal of Lane Co.*, 153 N.C. App. 119, 123, 571 S.E.2d 224, 226-27 (2002). In the present case, plaintiff's sole assignment of error, which is not even "stated at the conclusion of the record on appeal" as required by Rule 10(c)(1) but rather is located in the record prior to the judgment from which plaintiff appeals, states that the trial court "commit[ted] reversible error by dismissing the action of the plaintiff for lack of jurisdiction." Although plaintiff's assignment of error states the basis on which the trial court dismissed the complaint—that is, for a lack of jurisdiction—plaintiff fails to state the specific legal basis for the alleged error. *See Pamlico Props. IV v. SEG Anstalt Co.*, 89 N.C. App. 323, 325, 365 S.E.2d 686, 687 (1988). The dissent is correct in noting that plaintiff challenges the dismissal of his action on the basis of jurisdiction, but more than one type of jurisdictional defect may be alleged. *See* N.C. Gen. Stat. § 1A-1, Rules 12(b)(1), 12(b)(2) (2005). By making a blanket statement that the trial court erred in dismissing the complaint on jurisdictional grounds, plaintiff's assignment of error is fatally overbroad, vague, and unspecific.

When viewed *in toto*, the nature and number of rules violations, combined with the absence of any compelling justification for suspending the rules pursuant to Rule 2, justifies dismissal of plaintiff's

**STANN v. LEVINE**

[180 N.C. App. 1 (2006)]

appeal. Various panels of this Court have taken inconsistent approaches with respect to the application of Rule 2 of the Rules of Appellate Procedure and created confusion over the implications of the Supreme Court's opinion in *Viar v. N.C. Department of Transportation*, 359 N.C. 400, 610 S.E.2d 360, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005). We thus believe it is necessary to address this issue in more detail.

The dissent argues that our construction of the Rules of Appellate Procedure may raise the stakes for appellate attorneys and legal malpractice carriers alike. Our decision here, however, neither imposes an unreasonable burden on appellate attorneys nor is it a major surprise.

Practitioners long have understood the importance of abiding by the appellate rules. Many seminars and continuing legal education courses have been offered on this very subject. *See, e.g.,* Judge John M. Tyson, Ten Trial and Post-Trial Mistakes that Can Cost You on Appeal, *in* N.C. State View from the Bench, North Carolina Bar Ass'n, CLE No. 783VFB (Oct. 17, 2003);[1] Robert R. Marcus, An Overview of the North Carolina Rules of Appellate Procedure: What You Don't Know Can Hurt You, *in* Appellate Advocacy, North Carolina Bar Ass'n, CLE No. 716CY2 (Nov. 15, 2002). Additionally, the North Carolina Rules of Appellate Procedure are widely available and posted, free of charge, on the website for the Administrative Office of the Courts. *See* Rules, *available at* http://www.aoc.state.nc.us/www/public/html/rules.htm (last visited Oct. 24, 2006).

Despite the accessibility and acknowledged significance of the rules and the Supreme Court's plain language in *Viar*, the dissent nevertheless falls back on the maxim "to err is human." To err once is indeed human, and this Court, contrary to the dissent's contention, is not sanctioning automatic dismissal. However, the number and severity of the errors in the case *sub judice* cannot be tolerated, and the choice to take the "divine" step of forgiveness[2] for the appellate attorney's mistakes lies with the party in the case and the attorney's client, not with this Court. Otherwise, *ad hoc* application of the rules, with

---

1. North Carolina Supreme Court Justice Sarah Parker and Judges Linda M. McGee and John M. Tyson from this Court served as panelists for this presentation.

2. The full text of the Alexander Pope passage quoted by the dissent is "[g]ood-nature and good-sense must ever join; to err is human, to forgive, divine." Alexander Pope, *An Essay on Criticism; in Poetical Works* 62, 79 (Herbert Davis ed., 1978) (1711).

inconsistent and arbitrary enforcement, could lead to allegations of favoritism for one counsel over another.

Roger Traynor, former Chief Justice of the California Supreme Court, once wrote, "[t]o err is human, as a judge well knows, but to err is not always harmless." Roger J. Traynor, *The Riddle of Harmless Error* 3 (1970). If the North Carolina Supreme Court elects to amend Rule 2 to reflect the dissent's interpretation, it effectively will be adopting an approach analogous to "harmless error" to the North Carolina Rules of Appellate Procedure. *Cf.* Erika Plumlee, *"To Err Is Human"—But Is It Harmless?: Texas Rules of Appellate Procedure Rule 81(b)(2) and the Court of Criminal Appeals' Effort to Fashion a Workable Standard of Review*, 21 Tex. Tech. L. Rev. 2205 (1990). However, even a harmless error analysis is not without its critics:

> In our system of justice, fairness and impartiality are produced, if at all, by operation of legal rules and by the assignment of adjudicatory responsibilities. Those who fashion these rules, including the legislative and judicial branches of government, may be expected to consider the efficacy of what they produce and to decide what rules and standards are necessary to achieve fairness in the system as a whole. When a procedural or evidentiary rule seems not to work well, or when it seems to produce unjust results, the remedy is to amend or repeal it. The harmless error rule does neither. It leaves the law fully intact, but authorizes appellate court judges to pardon the violation of any legal precept, constrained only by their personal views of fairness and justice.

*Gentry v. State*, 806 P.2d 1269, 1278 (Wyo. 1991) (Urbigkit, C.J., dissenting); *see also* Harry T. Edwards, *To Err Is Human, But Not Always Harmless: When Should Legal Error Be Tolerated?*, 70 N.Y.U. L. Rev. 1167 (1995) (discussing the varying approaches to harmless error analysis and their respective flaws).

Additionally, a harmless error approach to our Rules of Appellate Procedure presents a classic slippery slope dilemma. As our Supreme Court noted nearly a century ago, "It is therefore necessary to have rules of procedure and to adhere to them, and if we relax them in favor of one, we might as well abolish them." *Bradshaw v. Stansberry*, 164 N.C. 356, 356, 79 S.E. 302, 302 (1913). Logically, the dissent's "to err is human" approach would permit all of the Rules of Appellate Procedure to be violated, so long as the appellee is able to respond effectively and this Court is able to address the appeal. If this

interpretation was adopted, the Rules of Appellate Procedure are no longer rules but merely guidelines. Such an interpretation contradicts the plain language of the rules and the intent of their drafters, as well as the plain language of the Supreme Court's opinion in *Steingress*, *Viar*, and *Viar's* progeny.

Despite the quantity and quality of plaintiff's rules violations, the dissent contends that violations that warrant dismissal are only those "that substantively affect the ability of the appellee to respond and this Court to address the appeal." This is the identical argument this Court's majority opinion asserted in *Viar* that was expressly rejected by the Supreme Court. Furthermore, although the dissent offers its own standard for determining when to suspend the Rules, rule-making authority is not conferred on this Court but belongs exclusively with the North Carolina Supreme Court. *See* N.C. Const. art. IV, § 13(2). Indeed, even the General Assembly may not alter or amend the appellate rules. *See id.*

For over the last thirty years, the governing framework for appeals in this state has been the North Carolina *Rules* of Appellate Procedure, and the Supreme Court specifically used the word "rules" and not "guidelines," "suggestions," or a word of similar import. *Cf.* *Brown v. Brown*, 353 N.C. 220, 224, 539 S.E.2d 621, 623 (2000) (noting that "[a]lthough the title of an act cannot control when the text is clear, the title is an indication of legislative intent." (citations omitted)). As succinctly explained by the Michigan Court of Appeals,

> a rule is a principle or regulation governing conduct, procedure, arrangement, etc. This is distinguishable from mere guidelines, reports, or objectives, which, though *guiding* conduct, do not *regulate* or *govern* conduct. The difference is that guidance is permissive while regulation and governance are not.

*Cole's Home & Land Co., LLC v. City of Grand Rapids*, 720 N.W.2d 324, 328-29 (Mich. Ct. App. 2006) (emphasis in original) (internal quotation marks omitted). As such, the appellate rules, by definition, are not permissive but instead are mandatory. *See Viar*, 359 N.C. at 401, 610 S.E.2d at 360.

This Court at times has evaluated rules violations under the more relaxed "substantial compliance" standard. *See Cox v. Steffes*, 161 N.C. App. 237, 241, 587 S.E.2d 908, 911 (2003) (" 'This Court has held that when a litigant exercises "substantial compliance" with the appellate rules, the appeal may not be dismissed for a technical vio-

lation of the rules.' " (quoting *Spencer v. Spencer*, 156 N.C. App. 1, 8, 575 S.E.2d 780, 785 (2003))), *disc. rev. denied*, 358 N.C. 233, 595 S.E.2d 148 (2004); *cf. Gage v. State*, 748 S.W.2d 351, 353 (Ark. 1988) (Purtle, J., dissenting) ("Unless we insist on *at least substantial compliance* with the law and the rules, we might as well consider them to be mere guidelines which should be followed . . . ." (emphasis added)). However, a "substantial compliance" exception to the rules has not been expressly endorsed by our Supreme Court. Even if the Supreme Court had adopted the "substantial compliance" analysis, plaintiff in the case *sub judice*, through his numerous and significant rules violations, failed to substantially comply with the rules with his brief.

Since rules, not guidelines, govern appeals in North Carolina, the plain language of Rule 2 of the Rules of Appellate Procedure also demonstrates that the Supreme Court did not intend for the mandatory rules to be suspended for cases such as the one before us. Pursuant to Rule 2,

> *[t]o prevent manifest injustice to a party, or to expedite decision in the public interest,* either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C. R. App. P. 2 (2006) (emphasis added). Furthermore, the commentary[3] to Rule 2 explains that

> [t]his Rule expresses an obvious residual power possessed by any authoritative rule-making body to suspend or vary operation of its published rules in specific cases where this is necessary to accomplish a fundamental purpose of the rules. . . . It is included here as a reminder to counsel that the power does exist, and that it may be drawn upon by either appellate court *where the justice of doing so or the injustice of failing to do so is made clear to the court.* The phrase "except as otherwise expressly provided" refers to the provision in Rule 27(c) that the time limits for taking

---

3. Concurrent with the adoption of the Rules of Appellate Procedure, the North Carolina Supreme Court adopted the commentary to the rules as set forth by the drafting committee. *See* 287 N.C. 671 (1975). Then-Associate Justice Exum explained that the commentary was offered only as guidance and the committee's notes "are not authoritative sources on parity with the rules." *Id.*

appeal laid down in these Rules (i.e. Rules 14 and 15) or in "juris-
dictional" statutes which are then replicated or cross-referred in
these Rules, i.e. Rules 3 (civil appeals), 4 (criminal appeals) and
18 (agency appeals), may not be extended by the court.

N.C. R. App. P. 2 cmt. (1975) (emphasis added). Despite the plain lan-
guage of the rule and commentary, panels of this Court have been
divided over whether and when to invoke Rule 2. The dissent notes
that this Court has invoked Rule 2 when the rules violations did not
impact the appellee's ability to respond or this Court's ability to
address the appeal. However, as another panel of this Court noted,

> our Supreme Court recently reversed *per curiam Munn v. North
> Carolina State University*, 173 N.C. App. 144, 617 S.E.2d 335
> (2005) for the reasons stated in Judge Jackson's dissenting opin-
> ion. *Munn v. North Carolina State University*, 360 N.C. 353, 354,
> 626 S.E.2d 270, 271 (2006). In her opinion, Judge Jackson cited
> *State v. Buchanan*, 170 N.C. App. 692, 693[], 613 S.E.2d 356, 357
> (2005) for the proposition, "Our Supreme Court has stated that
> this Court may not review an appeal that violates the Rules of
> Appellate Procedure *even though such violations neither
> impede our comprehension of the issues nor frustrate the appel-
> late process*." (Emphasis added). Thus, by reversing for the rea-
> sons stated in Judge Jackson's dissent, our Supreme Court has
> directly spoken on this issue.

*State v. Hart*, 179 N.C. App. 30, 38, 633 S.E.2d 102, 107-08 (2006), *disc.
rev. denied*, 360 N.C. 651, 637 S.E.2d 182 (2006); *see also Walsh v.
Town of Wrightsville Beach*, 179 N.C. App. 97, 99, 632 S.E.2d 271, 273
(2006). Such an approach makes sense, for when the rule and com-
mentary are read in *pari materia*, it is clear that the ability of this
Court to comprehend the issues on appeal is irrelevant with regard
the invocation of Rule 2. Rather, Rule 2 provides that violations of
time limits and jurisdictional requirements are irreparable, and where
review on the merits is allowed, other violations may be overlooked
where injustice is abundantly evident or the public interest would be
served "*and only in such instances*." *Steingress*, 350 N.C. at 66, 511
S.E.2d at 300 (emphasis added).

Determining what constitutes "manifest injustice" and when the
"public interest" is at stake, however, can be an arduous trek over
uncertain ground. Our Supreme Court has described appropriate
opportunities for the invocation of Rule 2 as "rare occasions," *Reep v.
Beck*, 360 N.C. 34, 38, 619 S.E.2d 497, 500 (2005), and "in exceptional

STANN v. LEVINE

[180 N.C. App. 1 (2006)]

circumstances," *Steingress*, 350 N.C. at 66, 511 S.E.2d at 299, and a thorough review of the Court's Rule 2 jurisprudence supports such characterizations. On several occasions, the Supreme Court expressly based its determination of "manifest injustice" on the severity of a criminal sentence—typically capital punishment[4] or life imprisonment.[5] As a practical matter, injustice is far more manifest when a person's life or liberty is at stake, and consequently, Rule 2 has found its greatest acceptance in the criminal context.[6] However, the Supreme Court has not suspended the appellate rules in all criminal appeals,[7] and last year, the Court specifically declined to invoke Rule 2 for a defendant facing life imprisonment. *See State v. Dennison*, 359 N.C. 312, 608 S.E.2d 756 (2005) (per curiam).

In addition to criminal cases where a severe punishment has been imposed, the Court has been more willing to invoke Rule 2, either on "manifest injustice" or "public interest" grounds, in criminal[8] or civil[9] cases that involve either substantial constitutional claims or issues of first impression. An example of a substantial constitutional claim

4. *See, e.g.*, *State v. Augustine*, 359 N.C. 709, 731, 616 S.E.2d 515, 531 (2005); *State v. Barden*, 356 N.C. 316, 332, 572 S.E.2d 108, 120 (2002), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003); *State v. Lemons*, 352 N.C. 87, 92, 530 S.E.2d 542, 545 (2000), *cert. denied*, 531 U.S. 1091, 148 L. Ed. 2d 698 (2001); *State v. Williams*, 350 N.C. 1, 10, 510 S.E.2d 626, 633 (1999); *State v. Adams*, 347 N.C. 48, 62, 490 S.E.2d 220, 227 (1997); *State v. Moody*, 345 N.C. 563, 576, 481 S.E.2d 629, 636 (1997); *State v. Gregory*, 342 N.C. 580, 584-86, 467 S.E.2d 28, 31-32 (1996); *State v. Williams*, 317 N.C. 474, 483, 346 S.E.2d 405, 411 (1986); *State v. Sanders*, 312 N.C. 318, 320, 321 S.E.2d 836, 837 (1984) (per curiam).

5. *See, e.g.*, *State v. Poplin*, 304 N.C. 185, 187, 282 S.E.2d 420, 421 (1981); *State v. Cohen*, 301 N.C. 220, 222, 270 S.E.2d 416, 418 (1980); *State v. Jones*, 300 N.C. 363, 365, 266 S.E.2d 586, 587 (1980); *State v. Williams*, 300 N.C. 190, 192-93, 265 S.E.2d 215, 216 (1980); *State v. Adams*, 298 N.C. 802, 804, 260 S.E.2d 431, 432 (1979); *State v. Samuels*, 298 N.C. 783, 787, 260 S.E.2d 427, 430 (1979).

6. *See also State v. Hooper*, 318 N.C. 680, 681, 351 S.E.2d 286, 287 (1987); *State v. Boykin*, 307 N.C. 87, 90, 296 S.E.2d 258, 260 (1982); *State v. Hunt*, 305 N.C. 238, 248, 287 S.E.2d 818, 824 (1982).

7. *See, e.g.*, *State v. Reid*, 322 N.C. 309, 313, 367 S.E.2d 672, 674 (1988); *State v. Fennell*, 307 N.C. 258, 263, 297 S.E.2d 393, 397 (1982).

8. *See, e.g.*, *State v. Wiley*, 355 N.C. 592, 624, 565 S.E.2d 22, 45 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003) (ex post facto claim); *State v. Robinson*, 339 N.C. 263, 276, 451 S.E.2d 196, 204 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995) (confrontation claim); *State v. Elam*, 302 N.C. 157, 161, 273 S.E.2d 661, 664 (1981) (equal protection, due process, and freedom of expression claims).

9. *See, e.g.*, *In re Montgomery*, 311 N.C. 101, 114, 316 S.E.2d 246, 254 (1984). Rule 2 was invoked in *Montgomery* on "public interest" grounds, but the Court just as well could have based the decision on "manifest injustice," as the case involved the termination of parental rights, "tantamount to a 'civil death penalty.'" *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. 2004) (en banc) (citations omitted).

may be seen with the Supreme Court's granting in 2002 of the plaintiffs' "Emergency Petition for Suspension of the Rules" in *Stephenson v. Bartlett*, a case of significant public interest wherein the plaintiffs challenged the constitutionality of the General Assembly's 2001 legislative redistricting plans for the State House of Representatives and the State Senate. *See* Emergency Petition for Suspension of the Rules, *Stephenson v. Bartlett*, 355 N.C. 279, 560 S.E.2d 550 (2002) (No. 94P02). An example of a case of first impression in which the Court invoked Rule 2 is *Brown v. Brown*, 353 N.C. 220, 539 S.E.2d 621 (2000). The issue in *Brown* was whether "the Court of Appeals err[ed] in concluding that equitable distribution does not abate if one of the parties dies after filing for equitable distribution and divorce, but before receiving an equitable distribution judgment or an absolute divorce decree." *Brown*, 353 N.C. at 221, 539 S.E.2d at 622. Because of the unique "procedural dilemma [whereby] appeal to the Court of Appeals was made on behalf of a deceased party, and the appearance in th[e] [Supreme] Court in response to defendant's appeal was likewise made on behalf of a deceased party," the Court determined on grounds of manifest injustice that it was necessary to invoke Rule 2. *Id.* Rule 2 just as easily could have been invoked on "public interest" grounds, however, as evidenced by the General Assembly's immediately overruling the Court's decision. *See Estate of Nelson v. Nelson*, 179 N.C. App. 166, 170-71, 633 S.E.2d 124, 128 (2006) ("In 2001, the General Assembly amended N.C. Gen. Stat. § 50-20, adding subsection (l) to provide that '[a] pending action for equitable distribution shall not abate upon the death of a party.' This statute abrogated the Supreme Court's decision in *Brown v. Brown*, which held an equitable distribution claim abated upon the death of a party." (citations omitted)).

In the thirty-one years since the Supreme Court adopted the Rules of Appellate Procedure, the Court consistently has confined its invocation of Rule 2 to extraordinary matters affecting the life or liberty of a criminal defendant or the constitutionality of a statute. "Manifest injustice" and "public interest" have been construed strictly, and perhaps the single anomaly, if it may be considered such, in the Court's jurisprudence is *Potter v. Homestead Preservation Ass'n*, 330 N.C. 569, 412 S.E.2d 1 (1992). The plaintiff in *Potter* brought suit for, *inter alia*, breach of a partnership agreement respecting the development of a 700-acre tract of land. Although plaintiff failed to cross-assign error to the trial court's dismissal of her contract claim, plaintiff nonetheless attempted to "invoke[] N.C. R. App. P. 28(c), as authorization for her argument that, despite having

made no cross-assignments of error, she is entitled to a new trial on the issue of damages, based on this theory of recovery." *Potter*, 330 N.C. at 575, 412 S.E.2d at 5. The Court rejected her argument, noting that Rule 28(c) would only apply to claims upon which plaintiff prevailed at trial. *See id.* Nonetheless, the Court found that dismissal for plaintiff's failure to cross-assign error and her corresponding misinterpretation of Rule 28(c) would be manifestly unjust. *See id.* at 576, 412 S.E.2d at 5.

Although *Potter* involved a purely private dispute, just as in the case *sub judice*, Rule 2 was invoked in *Potter* as a result of a misinterpretation of one of the rules and as a result of the substantial sums at stake in the matter. Although plaintiff in the instant case also seeks recovery for substantial monetary damages, plaintiff's rules violations are numerous and blatant. Thus, rather than looking to *Potter* for guidance, the Supreme Court's more recent decision in *Steingress v. Steingress*, 350 N.C. 64, 511 S.E.2d 298 (1999), better supports our refusal to invoke Rule 2 under these circumstances. *Steingress*, like the case before us, involved a purely private dispute: the aftermath of a failed marital relationship. Whereas the instant case is based on claims of alienation of affection and criminal conversation, the defendant in *Steingress* appealed an adverse decision regarding the equitable distribution of marital property. The defendant in *Steingress* violated Rules 26(g) and 28(b)(5), *see Steingress*, 350 N.C. at 65, 511 S.E.2d at 299, which plaintiff in the case before us also violated, in addition to Rules 28(b)(4), 28(b)(6), and 10(c). Specifically, the defendant, just as plaintiff here, failed to double space the text of her brief. *See id.* The defendant also "fail[ed] to set out in her brief references to the assignments of error upon which her presented issues and arguments were based." *Id.* Judge Walker in dissent explained that it was still possible "to determine which assignments are argued in the brief" and recommended taxing each attorney with costs for violating the rules. *Id.* at 67, 511 S.E.2d at 300. The dissent in the case *sub judice* echoes precisely Judge Walker's sentiment and recommendation, which nevertheless were rejected by our Supreme Court. *See id.* The defendant's rules violations were substantial, and as there was no issue of public interest or manifest injustice in *Steingress*, the Supreme Court held that our Court did not abuse its discretion in refusing to invoke Rule 2. *Id.* at 66-67, 511 S.E.2d at 299-300. This Court is cognizant of the societal importance of the institution of marriage, *see Whitford v. North State Life Ins. Co.*, 163 N.C. 223, 226, 79 S.E. 501, 502 (1913), but based on the quality and quantity of the appellate rules violations and based on the facts of

the case *sub judice*, we hold that it is unnecessary to invoke Rule 2 "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest." N.C. R. App. P. 2 (2006).

Although the parallels to *Steingress* and the language in *Viar* support our conclusion, it is likely that neither *Steingress* nor *Viar*—despite the attention they have garnered—were intended to serve as a lodestar for appellate rule determinations. Rather, the plain language of the rules themselves remains the essential guide for this Court in applying Rule 2 and the other Rules of Appellate Procedure. Furthermore, the authority to alter Rule 2 lies solely with our Supreme Court and not with panels of this Court. No matter what interpretations ultimately are adopted for the Rules of Appellate Procedure, we must be careful not to "enshrine inefficiency or lapse into complacency merely because occasional error is inevitable." *Quick v. State*, 450 So. 2d 880, 881 (Fla. Dist. Ct. App. 1984). Accordingly, because of the nature and number of plaintiff's violations of the North Carolina Rules of Appellate Procedure, this appeal is dismissed.

DISMISSED.

Judge TYSON concurs.

Judge GEER dissents by separate opinion.

GEER, Judge, dissenting.

I believe this Court increasingly elevates form over substance in its attempt to apply our Supreme Court's decision in *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 610 S.E.2d 360 (2005) (per curiam). Mr. Stann's appellate rule violations have neither impacted our ability to review his appeal nor hindered Mr. Levine's ability to adequately respond to Mr. Stann's arguments. Moreover, the majority opinion does not impose sanctions for appellate rules violations with an even hand: it levies the ultimate sanction of dismissal on Mr. Stann, while entirely ignoring rule violations in Mr. Levine's appellee brief. To dismiss, under these circumstances, what I believe is a meritorious appeal is to commit a manifest injustice. I would instead impose monetary sanctions on both parties' counsel under N.C.R. App. P. 25(b) and N.C.R. App. P. 34(b) and reach the merits of the case. Accordingly, I respectfully dissent.

**STANN v. LEVINE**

[180 N.C. App. 1 (2006)]

## *Viar*

The majority holds that the Supreme Court's decision in *Viar* mandates that we dismiss all appeals in which the appellant has committed violations of the appellate rules. I believe that this is a misconstruction of *Viar*. Contrary to the majority, I am not willing to assume that the Supreme Court intended to require dismissal for all rules violations regardless of their magnitude and regardless whether they impede the appellee's or this Court's ability to address the issues on appeal.

The appellant in *Viar* failed to comply with North Carolina Rules of Appellate Procedure 10 and 28(b) in very substantial respects. He made only two assignments of error, neither of which referenced the record, while only one stated the legal basis upon which the error was assigned. *Id.* at 401, 610 S.E.2d at 361. Additionally, the appellant's brief made no argument as to one assignment of error, thereby abandoning it under N.C.R. App. P. 28(b)(6), and, although the second "assignment of error purport[ed] to challenge the Industrial Commission's conclusion of law, . . . the arguments in [the appellant's] brief . . . [did] not address the issue upon which the Industrial Commission's conclusion of law was based." *Viar*, 359 N.C. at 402, 610 S.E.2d at 361.

Although the Supreme Court pointed out these violations of the rules—which in fact impeded appellate review—the focus of the Court's brief opinion was instead on this Court's reliance upon Rule 2 to "address[] the issue, *not raised or argued by plaintiff,* which was the basis of the Industrial Commission's decision . . . ." *Id.* (emphasis added). The Supreme Court emphasized: "It is not the role of the appellate courts . . . to create an appeal for an appellant." *Id.* Our Supreme Court explained that to use Rule 2 to raise and decide issues not addressed by the appellant left an appellee "without notice of the basis upon which an appellate court might rule." *Id.* In other words, the Supreme Court was concerned in *Viar* about this Court using Rule 2 to, in effect, fix errors by the appellant and resolve an appeal on a basis not addressed by the parties.

I am very concerned about this Court's moving beyond the issue specifically addressed in *Viar* and construing the opinion in a draconian manner. No truth is more fundamental than *errare humanum est* or, as Alexander Pope famously wrote, "[t]o err is human." Alexander Pope, *An Essay on Criticism*, pt. II, line 525 (1711). In light of this reality of human existence, I see no reason to construe

the Supreme Court's holding in *Viar* as stripping the appellate courts of all discretion to make allowances for human errors that make no difference in the review of an appeal. *Cf. Reep v. Beck*, 360 N.C. 34, 38, 619 S.E.2d 497, 500 (2005) (observing that Rule 2 on "rare occasions" is available to review issues not raised before the trial court, in violation of Rule 10, in order to prevent manifest injustice or to expedite a decision affecting the public interest).

The approach followed by the majority opinion effectively eviscerates Rule 2. In light of *Reep*, it is apparent, however, that the Supreme Court believes Rule 2 is alive and well, *Viar* notwithstanding. I believe that the Supreme Court expressed its intent in *Viar* with relative clarity: Rule 2 may not be used as a means to address issues not raised by an appellant. It is that evil that constitutes "creat[ing] an appeal for an appellant" and leaving an appellee "without notice of the basis upon which an appellate court might rule." *Viar*, 359 N.C. at 402, 610 S.E.2d at 361.

To hold that *Viar* must be read to require dismissal whenever an appellant violates the appellate rules in any fashion would lead to wholesale dismissals. Many, if not most, appeals involve some violation of the appellate rules, such as arranging the record on appeal in the wrong order, using the wrong font size in footnotes, or failing to include a certificate of compliance regarding the number of words in the brief (when it is obvious the brief is not overly long). Yet, this Court has not, even after *Viar*, dismissed those appeals involving minor violations of the appellate rules. A line must be drawn between those violations that warrant dismissal and those that do not.

I believe the proper line is to dismiss only those appeals that substantively affect the ability of the appellee to respond and this Court to address the appeal. Other panels of this Court have construed *Viar* similarly and concluded that this Court retains discretion under Rule 2 to allow an appeal to proceed despite minor rules violations. *See State v. Hill*, 179 N.C. App. ——, ——, 632 S.E.2d 777, 790 (2006) (exercising discretion under Rule 2, "despite the multiple violations of Rule 28(b)(6)," to consider appellant's arguments both "because of the seriousness of allegations of juror misconduct" and because "the thoroughness of the State's response . . . establishes that the State was on sufficient notice of the issue sought to be raised by Defendant and of the basis on which this Court might rule on this issue" and that, therefore, "a primary concern expressed by *Viar* . . . is absent in this circumstance"); *Welch Contr'g, Inc. v. N.C. Dep't of Transp.*, 175

N.C. App. 45, 49, 622 S.E.2d 691, 694 (2005) (considering plaintiff's appeal, despite violations of Rules 10 and 28, because defendants clearly "had sufficient notice of the basis upon which our Court might rule" and doing so neither "address[ed] an issue 'not raised or argued by plaintiff,' nor . . . 'create[d] an appeal for an appellant' " (quoting *Viar*, 359 N.C. at 402, 610 S.E.2d at 361)); *Davis v. Columbus Cty. Schs.*, 175 N.C. App. 95, 98, 622 S.E.2d 671, 674 (2005) (discussing this Court's interpretation of *Viar* "to review certain appeals in spite of rules violations"); *Coley v. State*, 173 N.C. App. 481, 483, 620 S.E.2d 25, 27 (2005) (relying on Rule 2 to review the plaintiffs' appeal because, despite several violations of Rules 28(b) and 41(b)(2), the violations were minor and did not require this Court to create an appeal for the plaintiffs or to examine any issues they had not raised), *aff'd and modified on other grounds*, 360 N.C. 493, 631 S.E.2d 121 (2006).

Automatic dismissal of an appeal for rules violations—regardless of the significance of the violations—is particularly unfair to the parties. An appellant has little ability to ensure that his or her counsel complies with the appellate rules. Because of carelessness by appellate counsel, a party with an otherwise meritorious appeal may be left with no remedy or relief. A legal malpractice claim may be difficult to pursue due to the need to prove that the appellant would have prevailed both on appeal and upon remand. On the other hand, it could be argued that if the appellee's counsel fails to file a motion to dismiss for rules violations, then counsel is not aggressively representing his or her client. Collegiality and principles of professionalism will have to be set aside in order to ensure proper representation of the appellate client. In all events, legal malpractice carriers must sit up and take notice: appellate practice has become high risk for malpractice claims. I do not believe this is the culture that *Viar* intended to create.

### Appellate Rules Violations in This Case

In this case, both parties' briefs reflect a lack of careful attention to the Rules of Appellate Procedure, although Mr. Stann's violations are more significant. I agree with the majority that Mr. Stann has violated Rule 26(g)(1) of the Rules of Appellate Procedure, which provides that, in all papers filed with the appellate courts, "[t]he body of text shall be presented with double spacing between each line of text." Mr. Stann's brief contains 1 1/3 line spacing throughout. Further, contrary to N.C.R. App. P. 28(b)(6), Mr. Stann's brief does not

contain a statement of grounds for appellate review or a statement of the applicable standard of review. Mr. Levine's brief likewise omits a statement of the standard of review and includes no Rule 29(j) certification. I disagree with the majority, however, that Mr. Stann's brief also violates Rules 28(b)(5) and 10(c)(1).

Rule 28(b)(5) requires that an appellant's brief contain a "full and complete statement of the facts . . . supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits, as the case may be." The majority concludes that Mr. Stann has violated this rule because the last two paragraphs of his statement of the facts contain no record citations. Although record citations in these paragraphs would have been preferable, the preceding 16 paragraphs contain dozens of citations to both the record and various exhibits, and the majority points to no authority suggesting this is inadequate. Accordingly, I would hold that Mr. Stann's fact section is in substantial compliance with the rules. I note that Mr. Levine's brief also fails to include necessary citations to the record in his restatement of the facts.

Rule 10(c)(1) requires the appellant to list his assignments of error "at the conclusion of the record on appeal" and states:

> Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned. An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references.

The majority faults Mr. Stann for failing to place his single assignment of error "at the conclusion" of the record. I would hold that its location on page 111 of a 117-page record is adequate, and, in any event, that this is truly a trivial rule violation.

More importantly, however, the majority also concludes that Mr. Stann's assignment of error violates Rule 10(c)(1) by being too "broad, vague, and unspecific" because it "fails to state the specific legal basis for the alleged error." Mr. Stann is challenging the trial court's granting of a motion to dismiss for lack of personal jurisdiction in a one-page order providing no specific explanation. Mr. Stann's assignment of error states that the trial court "commit[ted] reversible error by dismissing the action of the plaintiff for lack of

jurisdiction." As Rule 10(c)(1) requires assignments of error to be made "concisely and without argumentation," I am unclear what else the majority would have preferred Mr. Stann to have said. He could have stated that the court "erred by dismissing the action of the plaintiff for lack of jurisdiction because the court in fact had jurisdiction over Mr. Levine." But, I question whether such redundancy is truly necessary or desirable. Certainly, a lack of redundancy should not lead to dismissal of a meritorious appeal.

This case is unlike *Pamlico Props. IV v. Seg Anstalt Co.*, 89 N.C. App. 323, 365 S.E.2d 686 (1988), and *Walker v. Walker*, 174 N.C. App. 778, 624 S.E.2d 639 (2005), *disc. review denied*, 360 N.C. 491, 632 S.E.2d 774 (2006), upon which the majority relies to support its dismissal. In *Pamlico*, the appellant challenged the trial court's award of summary judgment on statute of limitations grounds with the following assignment of error: "[t]he granting of the motion for summary judgment of the defendant, The Rich Company." 89 N.C. App. at 325, 365 S.E.2d at 687 (alteration original). In contrast, Mr. Stann's assignment of error challenges the trial court's dismissal order on the specific legal basis of jurisdiction. I fail to see, therefore, how *Pamlico* supports the majority's conclusion.

*Walker* is even less analogous to the present case. The appellant in *Walker* set out 119 assignments of error, purporting to assign error to almost every finding of fact and conclusion of law made by the trial court. 174 N.C. App. at 781-82, 624 S.E.2d at 641. These assignments of error followed a repetitive pattern, with each finding or conclusion being the subject of three identical assignments of error, all in the following format:

a. The Trial Court's Finding of Fact [No. 'X'], on the grounds that it is not supported by the evidence.

b. The Trial Court's Finding of Fact [No. 'X'], on the grounds that it is erroneous as a matter of law.

c. The Trial Court's Finding of Fact [No. 'X'], on the grounds that it is an abuse of discretion.

*Id.*

The *Walker* Court concluded that these assignments of error were generic and " 'designed to allow counsel to argue anything and everything they desire in their brief on appeal.' " *Id.* at 782, 624 S.E.2d at 642 (quoting *Wetchin v. Ocean Side Corp.*, 167 N.C. App. 756, 759, 606

S.E.2d 407, 409 (2005)). In contrast, nothing indicates that Mr. Stann's lone assignment of error—specifically challenging the trial court's jurisdictional determination—" 'covers everything and touches nothing.' " *Id.* (quoting *Wetchin*, 167 N.C. App. at 759, 606 S.E.2d at 409).[10] It is eminently clear, to both this Court and Mr. Levine, what the legal basis of Mr. Stann's argument is. *Cf. Vernon, Vernon, Wooten, Brown & Andrews, P.A. v. Miller*, 73 N.C. App. 295, 297, 326 S.E.2d 316, 319 (1985) (concluding assignments of error are not required "where, as here, the sole question presented in defendant's brief is whether the trial court erred in granting summary judgment").

It is this Court's responsibility to correct errors in the trial courts, and I do not believe that we serve well the parties, the Bar, the citizens of North Carolina, or justice by dismissing appeals for mistakes by lawyers that hinder neither our ability to perform our responsibilities nor the ability of an opposing party to respond. While Mr. Stann's violations of the Rules of Appellate Procedure subject his appeal to sanctions, up to and including dismissal, *Viar*, 359 N.C. at 401, 610 S.E.2d at 360, neither the improper spacing, the failure to provide a statement of grounds for appellate review, the failure to provide a statement of the standard of review, the arrangement of the record, nor the phrasing of the assignment of error substantively impacts the appeal in this case.

Moreover, Mr. Levine likewise committed violations of the Appellate Rules. Yet, the majority imposes no sanction on the appellee whatsoever. The emphasis on dismissal as the only sanction for appellate rules violations allows appellees to violate the rules with impunity. It is very troubling to me that only appellants are at risk when violating the appellate rules.

Consequently, I would impose sanctions other than dismissal on both parties' counsel and would pass upon the merits of this case. *See Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 192, 614 S.E.2d 396, 400 (2005) ("Despite the Rules violations, we are able to determine the issues in this case on appeal. Furthermore, we note that defendant, in filing a brief that thoroughly responds to plaintiff's arguments on appeal, was put on sufficient notice of the issues on appeal."). With respect to the merits, I would reverse in part, for the reasons stated below.

10. Indeed, it is worth noting that the lone assignment of error in *Wetchin*, purporting to attack three rulings by the trial court, read only: "The ruling of the trial court in its Order of Dismissal entered on May 13, 2003." 167 N.C. App. at 758, 606 S.E.2d at 409.

## The Merits of Mr. Stann's Appeal

### A. Standard of Review for Rule 12(b)(2) Motions

A two-step analysis applies in determining whether a North Carolina court has personal jurisdiction over a nonresident defendant. "First, the [claim] must fall within the language of the State's 'long-arm' statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986).

When both defendant and plaintiff submit affidavits and other evidence addressing a motion to dismiss under N.C.R. Civ. P. 12(b)(2), the trial court "may hear the matter on affidavits presented by the respective parties, [or] the court may direct that the matter be heard wholly or partly on oral testimony or depositions." N.C.R. Civ. P. 43(e). *See also Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (" 'If the exercise of personal jurisdiction is challenged by a defendant, a trial court may hold an evidentiary hearing including oral testimony or depositions or may decide the matter based upon affidavits.' " (quoting *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217, *appeal dismissed and disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000)). If the trial court chooses to decide the motion based on affidavits, "[t]he trial judge must determine the weight and sufficiency of the evidence [presented in the affidavits] much as a juror." *Fungaroli v. Fungaroli*, 51 N.C. App. 363, 367, 276 S.E.2d 521, 524, *disc. review denied*, 303 N.C. 314, 281 S.E.2d 651 (1981).

In rendering its decision, the trial court is not required, under Rule 52(a)(2) of the Rules of Civil Procedure, to make specific findings of fact unless requested by a party. *Fungaroli*, 51 N.C. App. at 367, 276 S.E.2d at 524. When the record contains no findings of fact, " '[i]t is presumed . . . that the court on proper evidence found facts to support its judgment.' " *Id.* (quoting *Sherwood v. Sherwood*, 29 N.C. App. 112, 113-14, 223 S.E.2d 509, 510-11 (1976)). *See also Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986) ("In the case *sub judice*, the parties presented affidavits which materially conflicted. The trial judge apparently believed the evidence of [defendant] and presumably found the facts to be as set forth and supported by his affidavit.").

In this case, the parties submitted dueling affidavits accompanied by extensive exhibits. As in *Fungaroli* and *Cameron-Brown*, however, the record contains no indication that either party requested that the trial court make specific findings of fact in ruling on defendant's 12(b)(2) motion. An appellate court reviewing the order at issue would, therefore, be required to presume that the trial judge made factual findings based upon the evidence submitted that were sufficient to support a ruling in favor of defendant.

It would then be this Court's task to review the record to determine whether it contains any evidence that would support the trial judge's conclusion that the North Carolina courts' exercise of jurisdiction over Mr. Levine would be inappropriate. *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 672, 541 S.E.2d 733, 737 (2001) ("[T]he dispositive issue before us is the sufficiency of the evidence to support [the] determination that personal jurisdiction did not exist."). We could not revisit questions of credibility or weight that, based upon the trial court's ultimate ruling, necessarily must have already been decided by the trial court. *Evergreen*, 169 N.C. App. at 695, 611 S.E.2d at 183.

### B. Long-Arm Jurisdiction

North Carolina's long-arm statute is set forth in N.C. Gen. Stat. § 1-75.4 (2005). The subsections pertinent to this case are N.C. Gen. Stat. § 1-75.4(3) and -75.4(4)(a), which provide:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j), Rule 4(j1), or Rule 4(j3) of the Rules of Civil Procedure under any of the following circumstances:

. . . .

(3) Local Act or Omission.—In any action claiming injury to person or property or for wrongful death within or without this State arising out of an act or omission within this State by the defendant.

(4) Local Injury; Foreign Act.—In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury . . . :

> a. Solicitation or services activities were carried on within this State by or on behalf of the defendant[.]

These subsections are commonly referred to as jurisdiction based on a "local act" or based on a "local injury."

It is not sufficient for Mr. Stann to demonstrate that at least one of his causes of action falls within the long-arm statute. N.C. Gen. Stat. § 1-75.5 requires that there be a separate basis for jurisdiction for each cause of action:

> In any action brought in reliance upon jurisdictional grounds stated in subdivisions (2) to (10) of G.S. 1-75.4 there cannot be joined in the same action any other claim or cause against the defendant unless grounds exist under G.S. 1-75.4 for personal jurisdiction over the defendant as to the claim or cause to be joined.

*See also Godwin v. Walls*, 118 N.C. App. 341, 352, 455 S.E.2d 473, 482 (1995) (holding that although plaintiffs met their burden of establishing personal jurisdiction over their claims for negligent infliction of emotional distress under N.C. Gen. Stat. § 1-75.4(4), the long-arm statute did not confer personal jurisdiction over plaintiffs' claims for wrongful death and property damage).

I first consider N.C. Gen. Stat. § 1-75.4(4) as a basis for long-arm jurisdiction. This Court has previously held that "an action for alienation of affections and for criminal conversation is an action *ex delicto* and involves 'injury to person or property' within the contemplation of [§ 1-75.4(3)]." *Golding v. Taylor*, 19 N.C. App. 245, 247, 198 S.E.2d 478, 479 (quoting N.C. Gen. Stat. § 1-75.4), *cert. denied*, 284 N.C. 121, 199 S.E.2d 659 (1973). That subsection, however, only applies if the action is one "claiming injury to person or property *within this State*." N.C. Gen. Stat. § 1-75.4(4) (emphasis added). In this case, the record contains competent evidence that would permit the trial court to find that Mr. Stann is a resident of South Carolina and that any injury he suffered occurred outside of this State. While evidence also exists that would support the opposite conclusion, an appellate court must presume that the trial court found § 1-75.4(4) to be inapplicable.

N.C. Gen. Stat. § 1-75.4(3), however, governs "injury to person or property . . . *within or without this State*" so long as it arose out of an act or omission committed by the defendant within this State. (Emphasis added.) An appellate court must, therefore, determine whether Mr. Stann's injury from the alleged alienation of affections

and from the alleged criminal conversation arose out of an act or omission by Mr. Levine in this State.

The elements of an alienation of affections claim are " '(1) [t]hat [the plaintiff and his or her spouse] were happily married, and that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; [and] (3) that the wrongful and malicious acts of the defendant[] produced and brought about the loss and alienation of such love and affection.' " *McCutchen v. McCutchen*, 360 N.C. 280, 283, 624 S.E.2d 620, 623 (2006) (alterations in original) (quoting *Litchfield v. Cox*, 266 N.C. 622, 623, 146 S.E.2d 641, 641 (1966)). *McCutchen* clarified that an alienation claim accrues:

> when the wrong is complete. The 'wrong' in an alienation of affections case is the actual alienation of the spouse's affections by a third party. Alienation connotes the destruction, or serious diminution, of the love and affection of the plaintiff's spouse for the plaintiff. This diminution or destruction often does not happen all at once. . . . It is only after the diminution or, when applicable, the destruction of love and affection is complete that plaintiff's cause of action accrues . . . .

*Id.* at 283-84, 624 S.E.2d at 623-24 (internal citations and quotation marks omitted).

Operating under the presumption that the trial court found facts sufficient to support its conclusion that the exercise of personal jurisdiction would be improper, I note that the record contains ample evidence suggesting that the actual alienation of affections occurred by 31 August 2003. On that date, Ms. Stann sent Mr. Levine an e-mail indicating she had told Mr. Stann that she "didn't feel anything for him anymore." Referencing this e-mail, Mr. Stann stated in an affidavit: "At that point Mr. Levine had accomplished his mission of ruining my marriage."

The actions causing the "wrong" for purposes of alienation of affections were e-mails sent by Mr. Levine and telephone calls made by Mr. Levine since, as of 31 August 2003, no act of sexual intercourse had occurred and, indeed, Mr. Levine and Ms. Stann had not even met in person. There is no dispute that all of those acts of Mr. Levine occurred in Tennessee. Further, at that time, Ms. Stann was residing in South Carolina, and Mr. Levine's evidence indicated that he was not specifically directing his communications to North Carolina. Based

on this evidence, the trial court could properly conclude that no local act occurred with respect to the claim for alienation of affections.

In contrast, in *Fox v. Gibson,* 176 N.C. App. 554, 558-60, 626 S.E.2d 841, 844-45 (2006), this Court recently upheld a trial court's *denial* of a motion to dismiss based on N.C. Gen. Stat. § 1-75.4(3), in an action alleging alienation of affections, when the defendant not only sent e-mails and made telephone calls to the plaintiff's husband, who resided in North Carolina, but also caused the alienation of affections by engaging in sexual relations in North Carolina. This Court held that competent evidence existed to support the trial court's conclusions that " '[t]his action arises directly out of Defendant's activities within and to the state of North Carolina' " and, accordingly, § 1-75.4(3) conferred personal jurisdiction. *Fox,* 176 N.C. App. at 559, 626 S.E.2d at 844.

In this case, the standard of review is controlling. It is well established that " '[t]he trial court's determination regarding the existence of grounds for personal jurisdiction is a question of fact.' " *Eluhu v. Rosenhaus,* 159 N.C. App. 355, 357, 583 S.E.2d 707, 710 (2003) (quoting *Adams, Kleemeier, Hagan, Hannah & Fouts, PLLC v. Jacobs,* 158 N.C. App. 376, 379, 581 S.E.2d 798, 801, *rev'd per curiam on other grounds,* 357 N.C. 651, 588 S.E.2d 465 (2003)), *aff'd per curiam,* 358 N.C. 372, 595 S.E.2d 146 (2004). In *Fox,* this Court determined that evidence existed to support the trial court's finding that the plaintiff's injury arose out of a local act and, therefore, upheld the trial court's determination that personal jurisdiction existed. In this case, however, the trial court made a contrary determination. Because the record contains evidence supporting a conclusion that Mr. Stann's alienation of affections injury did not arise out of a local act within the meaning of N.C. Gen. Stat. § 1-75.4(3), I would similarly uphold the trial court's determination regarding personal jurisdiction. I would, therefore, hold that the trial court did not err in dismissing Mr. Stann's claim for alienation of affections based on a lack of personal jurisdiction.

I reach a different conclusion with respect to Mr. Stann's claim for criminal conversation. The elements of criminal conversation are (1) " 'the actual marriage between the spouses;' " and (2) " 'sexual intercourse between defendant and the plaintiff's spouse during the coverture.' " *Johnson v. Pearce,* 148 N.C. App. 199, 200-01, 557 S.E.2d 189, 190 (2001) (quoting *Brown v. Hurley,* 124 N.C. App. 377, 380, 477 S.E.2d 234, 237 (1996)). Because the cut-off date for criminal conversation is the date of absolute divorce, this Court has held "that post-

separation conduct is sufficient to establish a claim for criminal conversation." *Id.* at 201, 557 S.E.2d at 191.

Here, Mr. Levine's answer to the complaint acknowledges that sexual intercourse occurred between Mr. Levine and Ms. Stann in North Carolina about ten days after the Stanns' separation in September 2003. Mr. Stann's affidavit, purporting to cite interrogatory answers from Mr. Levine that are not before this Court, also lists sexual encounters in North Carolina in October 2003, February 2004, and March 2004. In short, the evidence in the record establishes that acts of sexual intercourse that could constitute criminal conversation occurred in North Carolina. Since Mr. Stann claims injury from those acts of criminal conversation, the record establishes the existence of an "injury to person . . . within or without this State arising out of an act . . . *within this State by the defendant.*" N.C. Gen. Stat. § 1-75.4(3) (emphasis added). Mr. Stann's claim for criminal conversation, therefore, falls within North Carolina's long-arm statute.

C. <u>Minimum Contacts</u>

Because a basis for jurisdiction exists under the long-arm statute, I next examine whether the exercise of long-arm jurisdiction would violate Mr. Levine's due process rights. To satisfy the requirements of the due process clause, there must exist " 'certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Tom Togs*, 318 N.C. at 365, 348 S.E.2d at 786 (alteration in original) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 2d 95, 102, 66 S. Ct. 154, 158 (1945)).

In cases that "arise from or are related to defendant's contacts with the forum, a court is said to exercise 'specific jurisdiction' over the defendant." *Bruggeman*, 138 N.C. App. at 617, 532 S.E.2d at 219. When, however, a defendant's contacts with the state are not related to the suit, "an application of the doctrine of 'general jurisdiction' is appropriate." *Id.* Under that doctrine, " 'jurisdiction may be asserted even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient continuous and systematic contacts between defendant and the forum state.' " *Id.* (quoting *Fraser v. Littlejohn*, 96 N.C. App. 377, 383, 386 S.E.2d 230, 234 (1989)).

Mr. Stann does not make any argument as to general jurisdiction on appeal. Mr. Levine's affidavit indicates that although he has trav-

eled through our State, he is not and has never been a resident of North Carolina, nor has he ever owned property or conducted business here. The trial court was entitled to conclude that Mr. Levine lacked sufficient continuous and systematic contacts necessary for the exercise of general jurisdiction. *Id.* at 618, 532 S.E.2d at 219 (holding that "mere ownership of property in North Carolina is not sufficient to establish the necessary minimum contacts" for purposes of general jurisdiction). *See also Fraser*, 96 N.C. App. at 383, 386 S.E.2d at 234 (noting that the "activity by defendant must be connected to the forum state in such a way that defendant could reasonably anticipate being brought into court there").

With respect to specific jurisdiction, "the relationship among the defendant, the forum state, and the cause of action is the essential foundation for the exercise of *in personam* jurisdiction." *Tom Togs*, 318 N.C. at 366, 348 S.E.2d at 786. Our courts typically look at the following factors in determining whether minimum contacts exist: (1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) the convenience to the parties. *Bruggeman*, 138 N.C. App. at 617, 532 S.E.2d at 219. These factors are not to be applied mechanically, but rather, the court must weigh the factors and determine what is fair and reasonable to both parties. *Phoenix Am. Corp. v. Brissey*, 46 N.C. App. 527, 531, 265 S.E.2d 476, 479 (1980). *See also B.F. Goodrich Co. v. Tire King of Greensboro, Inc.*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986) (holding that no single factor controls and that all factors "must be weighed in light of fundamental fairness and the circumstances of the case").

Here, the precise quantity of contacts is not clear, although Mr. and Ms. Stann's affidavits both indicate that Ms. Stann and Mr. Levine met and engaged in sexual intercourse in Asheville, North Carolina approximately ten days after the Stanns' separation. In addition, Mr. Stann's evidence also indicates—and Mr. Levine apparently does not dispute—that additional sexual liaisons occurred in North Carolina during the fall of 2003 and winter and spring of 2004.

With respect to the nature and quality of the contacts, our courts have held that contacts may amount to the defendant having " 'purposefully avail[ed] [him]self of the privilege of conducting activities in the State,' " *Havey v. Valentine*, 172 N.C. App. 812, 815, 616 S.E.2d 642, 647 (2005) (quoting *ALS Scan, Inc. v. Digital Servs. Consultants*, 239 F.3d 707, 712 (4th Cir. 2002)), when " 'the defendant has

taken deliberate action within the forum state . . . .' " *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Contacts that are " 'isolated' or 'sporadic' may support specific jurisdiction if they create a 'substantial connection' with the forum . . . ." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542, 105 S. Ct. 2174, 2183 (1985)). Nevertheless, "the contacts must be more than random, fortuitous, or attenuated." *Id.* In assessing contacts, we look only at those made by the defendant and not those of others related to the case. *Id.* at 818, 616 S.E.2d at 648.

I would hold that Mr. Levine's contacts, in which he traveled from Tennessee to North Carolina to meet Ms. Stann, necessarily constitute deliberate actions. They are not the "random, fortuitous, or attenuated" actions described in *Havey. See id.* at 817, 616 S.E.2d at 648 (holding that the availability of defendant corporation's "informational, passive website" in North Carolina is not enough contact for purposeful availment).

The relationship of Mr. Levine's actions in North Carolina to the criminal conversation claim is readily apparent. Any instance of " 'sexual intercourse between defendant and the plaintiff's spouse' " prior to absolute divorce gives rise to the tort of criminal conversation. *Johnson*, 148 N.C. App. at 200, 557 S.E.2d at 190 (quoting *Brown*, 124 N.C. App. at 380, 477 S.E.2d at 237). The present claim of criminal conversation thus necessarily arises from Mr. Levine's conduct with Mr. Stann's spouse in North Carolina.

The next factor—the interest of North Carolina—is more difficult. In *Eluhu*, this Court observed that although North Carolina has an interest in providing a forum for actions based on torts in North Carolina, that interest is less significant when neither the plaintiff nor the defendant is a resident of North Carolina. 159 N.C. App. at 360, 583 S.E.2d at 711. Under our standard of review, we must presume the trial judge found that Mr. Stann was, during the pertinent events, in fact a resident of South Carolina. Under those circumstances, as in *Eluhu*, "plaintiff's decision to sue defendant in North Carolina smacks of forum-shopping," *id.*, since both South Carolina, Mr. Stann's residence, and Tennessee, Mr. Levine's residence, have abolished the actions of alienation of affections and criminal conversation.

Lastly, with respect to the convenience of the parties, defending a suit in North Carolina would be somewhat inconvenient to Mr. Levine, but our courts have found less inconvenience when, as here,

the defendant lives in a neighboring state. *Cooper v. Shealy*, 140 N.C. App. 729, 736, 537 S.E.2d 854, 858 (2000). Mr. Stann's law office is in Gastonia, North Carolina, while Ms. Stann lives and works in Salisbury, North Carolina. Under similar facts, our courts have concluded that this factor weighed in favor of jurisdiction in North Carolina. *See Fox*, 176 N.C. App. at 560, 626 S.E.2d at 845; *Cooper*, 140 N.C. App. at 735-36, 537 S.E.2d at 858.

In sum, Mr. Levine had several, deliberate contacts with North Carolina that directly gave rise to Mr. Stann's criminal conversation cause of action. In addition, litigation in this State would not substantially inconvenience any of the parties. The only factor weighing against jurisdiction is the possibly tenuous interest of the State in providing a forum for Mr. Stann's claims. Given the other factors, however, I would conclude that Mr. Levine had sufficient minimum contacts to support jurisdiction with respect to the criminal conversation claim. *Compare Eluhu*, 159 N.C. App. at 360-61, 583 S.E.2d at 711-12 (affirming grant of motion to dismiss when the evidence disclosed little, if any, connection between defendant's contacts with North Carolina and plaintiff's cause of action; plaintiff appeared to be forum shopping; litigation would be inconvenient for defendant, who was a resident of California; and plaintiff, a resident of Tennessee, had no claim that North Carolina should provide a forum) *with Fox*, 176 N.C. App. at 560, 626 S.E.2d at 845 (holding that trial court properly concluded minimum contacts existed when defendant had numerous telephone conversations with plaintiff's husband, a resident of North Carolina, along with e-mail messages and sexual relations; there was a direct relationship between plaintiff's injuries and defendant's contacts; plaintiff, a resident of North Carolina, could not bring suit in defendant's home state because of abolition of the causes of action; and defendant, although residing in Georgia, would have only a minimal travel burden).

While I acknowledge that unlike in *Fox*, the holding that I would reach would reverse the trial court, I am unable to conclude, given the significance of Mr. Levine's North Carolina contacts to Mr. Stann's claim, that the record's evidence supports a finding of a lack of minimum contacts. I would, therefore, hold that the trial court erred in dismissing Mr. Stann's criminal conversation claim.

### Conclusion

This appeal presents difficult questions relating to controversial causes of action. I would not side-step resolution of those questions

solely because the appellant's counsel—like the appellee's counsel—has been somewhat casual in compliance with the Appellate Rules. Our job is to correct errors by the trial court. We are not doing that job when we dismiss appeals for non-substantive rules violations.